In the Matter of the STUYVESANT SQUARE THRIFT SHOP, INC., Respondent, v TAX COMMISSION OF THE CITY OF NEW YORK et al., Appellants.

First Department, August 7, 1980

**APPEARANCES OF COUNSEL**

*Judith R. Greenwald* of counsel (*Edith I. Spivack* and *Russell D. Scott* with her on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for appellants.

*James C. Sherwood* of counsel (*J. Truman Bidwell, Jr.,* and *David C. Goss* with him on the brief; *Donovan Leisure Newton & Irvine,* attorneys), for respondent.

## OPINION OF THE COURT

BLOOM, J.

This case presents a question of rather widespread interest. It poses the issue of whether a thrift shop organized by a group of charitable organizations, the profits of which are used exclusively to contribute to its member organizations, is exempt from real estate tax under section 421 (subd 1, par [a]) of the Real Property Tax Law.

Petitioner (Thrift Shop) is a membership corporation. It was organized in 1967 under the Membership Corporations Law (now the Not-For-Profit Corporation Law) to operate a thrift shop and to dispose of the net profits realized by it "by contributions to other agencies, organizations or institutions organized for charitable, philanthropic, eleemosynary or benevolent purposes". Originally, its members were nine in number. They have since been reduced to eight and consist of two hospital auxiliaries, three neighborhood and settlement houses, one women's church organization, the Youth Counseling League and Goodwill Industries, Inc.

The Thrift Shop receives merchandise, which it refurbishes.* It is then sold to the public. On occasion, some of the merchandise is sold, at substantially reduced prices, to persons referred by its members as unable to pay the full Thrift Shop price.

The Thrift Shop employs a staff of five full-time members. Most of the work is performed by volunteers who are sent by member organizations. It is estimated that in the year preceding the application for tax exemption, a total of 150 persons served as volunteers and donated an aggregate of approximately 30,000 hours.

After deduction of the cost of operation, the Thrift Shop pays over to its member organizations all profits realized. This is done on a proportionate basis so that each member receives a share of the profits commensurate with its contribution to the total profits realized.

On February 3, 1976, Thrift Shop acquired title to the land and building located in the vicinity of 88th Street and Second

---

* Goodwill Industries, Inc., one of the members of the Thrift Shop corporation, is engaged in the rehabilitation of the handicapped. It employs handicapped persons to work in the Thrift Shop. They produce some of the products sold in the Thrift Shop and repair and refurbish others. Goodwill pays some of the persons so employed as part of their rehabilitative therapy.

Avenue, known and designated as 1704-06 Second Avenue. It made application for tax exemption which was denied and the land and building were assessed at $210,000 for the tax year 1977-1978. Thereupon, Thrift Shop brought this proceeding to vacate the assessment and to cancel it of record. Special Term granted the application. We reverse.

In 1971, when the State Legislature revised the scheme of real estate tax exemptions, it created two separate bases for exemption. One covered the right to unqualified exemption (Real Property Tax Law, § 421, subd 1, par [a]). The other permitted a qualified exemption provided the governing board of a municipal corporation authorized such exemption by adoption of a local law, ordinance or resolution to that effect (Real Property Tax Law, § 421, subd 1, par [b]).

There is here no assertion that the city, through its governing board, had adopted any local law, ordinance or resolution entitling those in the same category as Thrift Shop to exemption. Accordingly, Thrift Shop unequivocally rests its claim to exemption upon an unqualified right thereto.

Section 421 (subd 1, par [a]) of the Real Property Tax Law provides: "Real property owned by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or association or by another such corporation or association as hereinafter provided shall be exempt from taxation as provided in this section."

The statute fixes two conditions necessary to qualify for tax exemption. First among the statutory caveats is the requirement that the corporation or association be organized exclusively for purposes declared by the statute to be tax exempt (*Matter of Genesee Hosp. v Wagner,* 47 AD2d 37, affd 39 NY2d 863; *Matter of Association of Bar of City of N. Y. v Lewisohn,* 34 NY2d 143; *Matter of Presbyterian Residence Center Corp. v Wagner,* 66 AD2d 998; *Matter of Chautauqua Inst. v Town of Chautauqua,* 35 AD2d 1). Secondly, the property involved must be used for carrying on one or more of the designated purposes (*Matter of Association of Bar of City of N. Y. v Lewisohn,* 34 NY2d 143, *supra; Matter of Steiner Educational & Farming Assn. v Brennan,* 65 AD2d 868). While the statute uses the word "exclusively," the courts have

limited the word so that an incidental use for other purposes will not serve to defeat the beneficent purpose of the statute provided that there is a reasonable relationship between the use and the charitable purpose. Thus, "while exemption statutes should be construed strictly against the taxpayer seeking the benefit of the exemption, an interpretation so literal and narrow that it defeats the exemption's settled purpose is to be avoided" *(Matter of Association of Bar of City of N. Y. v Lewisohn,* 34 NY2d 143, 153, *supra).* If the use is reasonably incident to the function of the charitable corporation, the charitable exemption will not be lost *(People ex rel. Untermyer v McGregor,* 295 NY 237; *Matter of Genesee Hosp. v Wagner,* 47 AD2d 37, affd 39 NY2d 863, *supra; Matter of Steiner Educational & Farming Assn. v Brennan,* 65 AD2d 868, *supra).*

Since these tax exemption matters arise, almost invariably, in the context of a profit-making venture, the courts have added a third condition. This condition requires that where profits are the result of an incidental use, the profits must be devoted to the charitable purpose. No part of the pecuniary benefit "may inure to the benefit of any of its officers, members or employees, nor may it simply be used as a guise for profit-making operations" *(Gospel Volunteers v Village of Speculator,* 33 AD2d 407, 410, affd 29 NY2d 622).

Measured by these criteria it is readily apparent that Thrift Shop meets the third or court-created standard. It is undisputed that the profits realized by it were distributed to its charitable organization members according to some fixed formula and Special Term so held. No part of the profits inured to the benefit of the officers, members or employees of the charitable organization. The problem arises with the norms fixed by statute. Clearly, the real property is not *owned* "by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children". (Real Property Tax Law, § 421, subd 1, par [a].) It is, in fact, owned by Thrift Shop, a separate and independent corporation. Even were we to treat this separate and independent corporation as nonexistent and to assume a joint venture by the eight members of the corporation, we would still run afoul of the second statutory caveat. That mandates that the real property be used for carrying out the purposes of the charitable organization or association. Here, the Thrift Shop had a single and sole

purpose—to make a profit, a purpose neither exclusively nor incidentally the purpose of any of its members. While it is true that the profit is thereafter to be distributed to the charitable organization members of Thrift Shop, the primary purpose is not altered *(Young Women's Christian Assn. of City of N. Y. v City of New York,* 217 App Div 406, affd 245 NY 562). Indeed, absent the primary purpose there would be no reason for the existence of the Thrift Shop. It is a profit-making venture engaged in by these eleemosynary institutions to assist them in supporting themselves. In sum, it is the "guise for profit-making operations" found impermissible in *Gospel Volunteers v Village of Speculator* (33 AD2d 407, 410, affd 29 NY2d 622, *supra).* When such operations are undertaken "in the hope, often delusive, of expanding the charity" or to assist it in supporting itself, the exemption is lost *(People ex rel. Young Men's Assn. for Mut. Improvement in City of Albany v Sayles,* 32 App Div 197, 202, affd 157 NY 677).

Accordingly, the judgment of the Supreme Court, New York County (Bowman, J.), entered June 26, 1979 is reversed on the law and the assessment reinstated, without costs.

Birns, J. P., Sandler and Ross, JJ., concur with Bloom, J.; Markewich, J., dissents and would affirm for the reasons stated by Bowman, J., at Special Term.

Judgment, Supreme Court, New York County, entered on June 26, 1979, reversed, on the law, without costs and without disbursements, and the assessment reinstated.