# (May 5, 1983)

■ In the Matter of PAN AMERICAN ATHLETIC & SOCIAL CLUB, INC., Petitioner, v COMMISSIONER OF FINANCE OF THE CITY OF NEW YORK et al., Respondents. — Determination of respondent Commissioner of Finance of the City of New York, dated August 19, 1981, assessing petitioner for unpaid general corporation tax deficiencies for the period from January 1, 1966 to December 31, 1975, confirmed; application to review two other determinations of respondent, both dated August 19, 1981, assessing petitioner for unpaid commercial rent and occupancy taxes for the period from June 1, 1963 to May 31, 1976, denied and the petition dismissed, all without costs or disbursements. Had we reached the merits, we would have confirmed said determinations. Petitioner is a not-for-profit corporation organized to promote social, cultural and athletic activities among its members, with membership open to employees within the Atlantic Division of Pan American World Airways. Petitioner operates a facility located at Hangar No. 14 at JFK International Airport, which is leased by Pan American from the Port of New York Authority, the owner of the airport. Although it allegedly occupies the premises without payment of rent, petitioner pays to the Port Authority a commission of 3% of its gross sales. Sales, however, are limited to Pan American employees, petitioner's members and those eligible for membership. There are no business dealings with the general public. During the period involved in this proceeding, petitioner averaged almost $1,000,000 in annual gross receipts and with over $700,000 per year in purchases. From the period 1968 to the close of the audit, petitioner's net worth rose from $139,000 (1968) to approximately $189,000 (1975) and its inventory ranged from $113,000 to $203,000. In challenging the tax assessments, petitioner relies upon its status as a nonprofit social and athletic club; its use of funds received through the operation of the store to sponsor social and athletic activities; and its exempt status in terms of Federal income taxes. (Petitioner is exempt from Federal income taxes by a grant of tax exemption from the United States Treasury Department issued May 11, 1953, classifying petitioner as a social club under subdivision [8] of section 101 of the Internal Revenue Code of 1939 [now section 501 (subd [c], par [4]) of the Internal Revenue Code of 1954 (US Code, tit 26)].) We find substantial evidence in the record to sustain the assessments for unpaid general corporation tax for the years in question. Subdivision 1 of section R46-3.0 of the Administrative Code of the City of New York imposes a tax on "every domestic or foreign corporation" "[f]or the privilege of doing business, or of employing capital, or of owning or leasing property in the city in a corporate or organized capacity, or of maintaining an office in the city". Petitioner is not exempt under title QQ or subdivision 4 of section R46-3.0 of the Administrative Code; nor is it operated exclusively for nonprofit purposes (General Corporation Tax Regulations, § 1-6[b][2]). The fact that its certificate of incorporation records that it was organized for nonprofit purposes is insufficient. (*West Side Tennis*

*Club v Commissioner of Internal Revenue,* 111 F2d 6, 8.) Petitioner operates a store in which it does substantial business and from which it derives a profit. The fact that it is exempt from Federal income taxes is not determinative of the issue, since the General Corporation Tax Law does not include as an exemption any provision similar to section 501 (subd [c], par [4]) of the Internal Revenue Code. As to the assessments for unpaid commercial rent and occupancy taxes, the Administrative Code is clear in its direction that an assessment of tax liability is final and irrevocable. Petitioner brought this CPLR article 78 proceeding after unsuccessfully proceeding with an administrative hearing. However, it is undisputed that, prior to commencement of the proceeding, petitioner failed to pay the tax to be reviewed with penalties imposed, or furnish a bond to secure such payment (Administrative Code, §§ L46-8.0, E46-9.0, subd b). The failure to satisfy this condition precedent requires dismissal of that branch of the petition. We reject petitioner's suggestion that the provision in the Administrative Code that the tax be paid, prior to commencement of the proceeding, constitutes a denial of due process. Petitioner's claim that it is without sufficient funds to satisfy the deficiencies and, therefore, is unable on that basis to challenge the tax assessments, lacks merit. A similar argument has been rejected in cases holding that the taxpayer must deposit the disputed tax or post a bond as a condition to judicial review of the determination. (*Matter of Western Elec. Co. v Taylor,* 276 NY 309, 312; *Matter of Lehigh Val. R. R. Co. v Sohmer,* 174 App Div 732, 734-735.) The Supreme Court has also sustained such a condition as consistent with due process standards. (*California v Grace Brethren Church,* 457 US 393; *Bull v United States,* 295 US 247, 260; *Dodge v Osborn,* 240 US 118.) Were we to reach the merits, we find substantial evidence in the record to sustain the determinations. Clearly, petitioner does conduct a business at the airport store facility. The Administrative Code imposes a commercial rent tax upon any person for the use or occupancy of any premises within the city and who conducts therein any business, trade or other commercial activity. There are exemptions, *inter alia,* for corporations "organized and operated exclusively for religious, charitable, or educational purposes, or for the prevention of cruelty to children or animals" (Administrative Code, § L46-4.0, subd a, par 4). Petitioner's exemption as a social club or employee association under the Internal Revenue Code is not controlling to exempt it from the commercial rent tax since the Administrative Code does not contain a similar exemption. The fact that income generated from the store is used for social and athletic pursuits is also not dispositive since the tax applies regardless of the use to which the business profit is put. (See *Matter of Stuyvesant Sq. Thrift Shop v Tax Comm. of City of N. Y.,* 76 AD2d 461, affd 54 NY2d 735, wherein we held the real property tax applicable to a corporation which operated a store, albeit the profits were ultimately distributed to charitable organizations, which comprised its membership.) All of these factors, namely, the nature and extent of the business generated, the resulting profit, the payment of a fixed percentage of gross sales amounting to a rental payment to the landlord, were presumably considered during the administrative hearing. The determination against petitioner was neither arbitrary nor capricious and has a rational basis in the record. In any event, petitioner may not now raise for the first time in this proceeding for judicial review of that determination, the factual issue of whether the percentage of gross sales paid to the Port Authority constituted rent. There was a full opportunity to assert the claim during the administrative proceeding. Similarly, there is no merit to petitioner's objection to the imposition of the occupancy tax, which applies to any person who uses or occupies premises "for any gainful purpose" (Administrative Code, § E46-4.0, subd b). Here, it is clear

that petitioner's operation is profitable and the fact that the revenues are applied toward the club's recreational and social activities has no significance in terms of the imposition of the tax. We also disagree with Justice Kupferman, who dissents in part, and would annul the taxes for the period from 1963 to 1971 based upon the July 19, 1971 letter from the Deputy Commissioner of Finance, purporting to exempt petitioner from commercial rent or occupancy taxes since to do so would be acknowledging that this letter had retroactive effect. The nature and extent of petitioner's prior use and occupancy of the premises was a matter more peculiarly within the expertise of the Commissioner of Finance. On its face, the letter does not mandate retroactive application and we see no reason to accord to the correspondence greater effect than provided for therein. Examination of the July 19, 1971 letter from the deputy commissioner discloses that the claimed "ruling" was presumably predicated on the basis of the facts set forth in "your letter of June 17, 1971" which letter is not part of the record. It is impossible to speculate as to the precise nature or representations in that missing letter. But, assuming, in any event, that it was included in this record, it is difficult to find any basis for a claim of relevance thereon, the lynchpin of estoppel, for the period from 1963 to 1971, as a result of a letter first issued in 1971, eight years after the 1963 tax was due. Neither do we subscribe to the position by our dissenting colleague to consider matter dehors the record and which has been improperly referred to in petitioner's brief. The tax returns were never submitted on the administrative proceeding; their inclusion now is strongly objected to by respondents and, accordingly, may not be included in the record or considered by us on the appeal (see *Kahn v City of New York,* 37 AD2d 520, 521; *Block v Nelson,* 71 AD2d 509, 512; *Mulligan v Lackey,* 33 AD2d 991, 992). Concur — Murphy, P. J., Fein, Kassal and Alexander, JJ.

Kupferman, J., dissents in part in a memorandum as follows: I would annul the determination with respect to the period 1963 through 1971 and with respect to all interest and penalties. While the tax authorities cannot be foreclosed for the future from correcting an erroneous determination, although they carry an additional burden (*Matter of New York Botanical Garden v Assessors of Town of Washington,* 55 NY2d 328), where manifest injustice would otherwise result, the doctrine of equitable estoppel may be applied against the tax authorities in exceptional circumstances. (*Matter of 1555 Boston Rd. Corp. v Finance Administrator of City of N. Y.,* 61 AD2d 187.) This case presents such exceptional circumstances. By letter dated July 19, 1971, the Finance Administration of the City of New York granted petitioner-appellant's application for an exemption from commercial rents or occupancy tax. That letter informed appellant, *after the filing of a tax return,*[1] that it was not required to file returns pursuant to title L of chapter 46 of the Administrative Code of the City of New York, inasmuch as it did not appear to the Finance Administration that appellant occupied the premises to conduct a "trade or business". This letter constitutes both a determination and an estoppel up to and including the taxable year involved. Had appellant filed returns instead of relying on the determination by the Finance Administration that such filings were not required, the limitations period contained in the enabling legislation (L 1963, ch 257, § 1, subd [10])[2] would preclude further assessment on any

1. The findings of the Department of Finance stated that no tax returns were filed. The petitioner-appellant contends that they were filed and here submits copies, but this court refuses to enlarge the record. Perhaps the matter should be referred back to the Department of Finance.

2. That subdivision provides: "Except in the case of a wilfully false or fraudulent return with intent to evade the tax, no assessment of additional tax shall be made after

nonfraudulent return after the expiration of three years from the date of filing. At the very least, appellant should not be assessed interest and penalties in light of its reliance on the 1971 determination by the Finance Administration.

the expiration of more than three years from the date of the filing of a return, provided, however, that where no return has been filed as provided by law the tax may be assessed at any time." (See, also, Tax Law, §§ 1083, 1242 for similar limitation provisions.)