## INSTITUTE OF PROFESSIONAL PRACTICE, INC. v. TOWN OF BERLIN

[811 A.2d 1238]

No. 01-296

August 20, 2002. Appellant Town of Berlin appeals from a declaratory judgment granting appellee Institute of Professional Practice, Inc. property tax exemption for a lot and building located in the Town of Berlin. The Town argues first that the tax exemption in 32 V.S.A. § 3802(4) is only available to not-for-profit corporations that provide direct and immediate benefits to the citizens of Vermont and the local community where the corporation is located, and second that property used for administration and management is not tax exempt where other property used by the corporation to provide direct services is subject to tax or is out of state. We affirm.

The parties have stipulated to the facts; thus they are not in dispute. The Institute of Professional Practice, Inc. (IPP) is a not-for-profit corporation. It has no capital stock or shareholders, pays no dividends, and is not run for profit. IPP owns a 2.33-acre parcel in the Town of Berlin (Town), where their corporate headquarters is located. The property is used strictly for administration and management of the organization, including accounting, human resources, and executive offices. These functions are necessary to allow IPP to provide services to the public. IPP provides services to people with developmental and other disabilities in group homes, foster homes, and other assisted living programs located in New Hampshire, Massachusetts, Connecticut, and Maryland. They do not operate any homes in Vermont. Vermont does benefit from two other programs IPP provides: an employee assistance program, which assists employers in dealing with their troubled or developmentally disabled employees, and the Delta Program, which provides services to male perpetrators of physical, emotional, or psychological abuse. IPP employs 655 people out of state and twenty people in Vermont. Less than one percent of IPP's gross revenues were generated by services delivered in Vermont.

IPP sought a declaratory judgment that it was exempt from tax under 32 V.S.A. § 3802(4). In an earlier summary judgment decision, the court denied an exemption as to a vacant lot that IPP owns. IPP has not appealed this ruling. The court denied summary judgment twice as to the parcel in question here because there were still disputed questions of fact. In a later status conference, the court found that the dispute was over

a question of law and directed the parties to file stipulated facts, which they did. Four months later, without a hearing, the court issued its opinion and judgment granting IPP the tax exemption it sought.

The Town appeals the court's judgment on two grounds. First, the Town contends that implicit in the requirements for tax exemption in § 3802(4) is a requirement that the taxpayer provide direct and immediate benefits principally to Vermonters and citizens of the Town. Second, the Town argues that the parcel should not be exempt because it is not used for direct services, and the out-of-state property used for direct services is all subject to property tax.

The property tax exemption in this case is governed by 32 V.S.A. § 3802(4), which provides, in relevant part, that "[r]eal and personal estate granted, sequestered or used for public, pious or charitable uses" is exempt from property taxes. To be exempt from property tax as a public or charitable use, the property must meet three criteria: "(1) the property must be dedicated unconditionally to public use; (2) the primary use must directly benefit an indefinite class of persons who are part of the public, and must also confer a benefit on society as a result of the benefit conferred on the persons directly served; and (3) the property must be owned and operated on a not-for-profit basis." *Am. Museum of Fly Fishing, Inc. v. Town of Manchester*, 151 Vt. 103, 110, 557 A.2d 900, 904 (1989). The parties agree that IPP meets the first and third criteria. Their dispute focuses on the second criterion.

"It is axiomatic that a tax exemption is to be strictly construed against the party claiming it, although such a provision must be construed reasonably and not in a manner that would defeat the purposes of the statute." *Medical Ctr. Hosp. v. City of Burlington*, 152 Vt. 611, 615, 566 A.2d 1352, 1354 (1989) (citing *Am. Museum of Fly Fishing*, 151 Vt. at 108, 557

A.2d at 903). We are in this case construing the tax exemption statute. If the plain meaning of the statute resolves the controversy, we normally accept it without going further. See *Town of Killington v. State*, 172 Vt. 182, 188, 776 A.2d 395, 400 (2001). We must, however, give effect to the intent of the Legislature, and if the literal meaning of the words is inconsistent with that intent, the intent must prevail. See *Burr & Burton Seminary v. Town of Manchester*, 172 Vt. 433, 436, 782 A.2d 1149, 1152 (2001).

If the benefit of IPP's services were conferred primarily on Vermonters through services extended in Vermont, there would be no question that IPP would be entitled to the tax exemption sought. The case would be essentially indistinguishable from *Kingsland Bay School, Inc. v. Town of Middlebury*, 153 Vt. 201, 203-06, 569 A.2d 496, 497-99 (1989); see also *Sigler Foundation v. Town of Norwich*, 174 Vt. 129, 135, 807 A.2d 442, 447 (2002). The Town argues, however, that implicit in the definition of public use is a requirement that the people served must be primarily citizens of Vermont and the Town because the Legislature would have no reason to make property exempt to benefit residents of other states. It recognizes that this requirement appears nowhere in the statutory language, but it argues that, as in *Burr & Burton Seminary*, the requirement must be implied to honor legislative intent.

The Town argues that we so held in *English Language Center, Inc. v. Town of Wallingford*, 132 Vt. 327, 331, 318 A.2d 180, 183 (1974), and, as a result, all the cases subsequent to *English Language Center, Inc.* involve activities primarily for Vermont residents. It argues that in *English Language Center, Inc.* we held that property used to teach English to foreign students was not tax exempt because it was being used for the benefit of foreign citizens. The Town mischaracterizes our holding. Instead, we held that

the land there was not tax exempt because the students were using the skills they learned to further their personal and private business and leisure interests, and not any public interest. *Id.* at 331, 318 A.2d at 183. We did not hold that the residence of the beneficiary was determinative; the fact that the residence of the beneficiaries in later cases was Vermont did not factor into the decision.

For two reasons, we believe we must apply the plain meaning of the statutory wording here. First, there are many ways that we could design a tax exemption eligibility policy consistent with the Town's view of legislative intent. Unlike *Burr & Burton Seminary*, where the question was whether land owned by a school had to be used for school purposes, the choices presented here are complex and far more suited to legislative resolution than to case-by-case judicial decision making. A decision for the Town in this case would leave the tax exemption eligibility rules uncertain and likely spawn much litigation.

Second, we conclude that the policy the Town urges would be unconstitutionally discriminatory against non-Vermont consumers of IPP's services. The position the Town advocates is just like the position advocated by the State of Maine in *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 572 (1997). There, the United States Supreme Court struck down a property tax exemption for institutions that are "operated principally for the benefit" of Maine citizens because it violated the dormant Commerce Clause power of Congress. *Id.* at 568, 595; see U.S. Const. art. I, § 8, cl. 3; Me. Rev. Stat. Ann. tit. 36, § 652(1)(A) (Supp. 1996). The land in that case was used as a camp for children who follow the Christian Science faith. The Maine Supreme Judicial Court ruled that the camp did not qualify for the exemption because the camp drew ninety-five percent of its campers from outside of Maine.

The United States Supreme Court framed the issue as "the disparate real estate tax treatment of a nonprofit service provider based on the residence of the consumers that it serves." *Newfound*, 520 U.S. at 572. "The Commerce Clause presumes a national market free from local legislation that discriminates in favor of local interests." *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 393 (1994). "Discrimination against interstate commerce in favor of local business or investment is *per se* invalid, save in a narrow class of cases in which the municipality can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *Id.* at 392; see, e.g., *Maine v. Taylor*, 477 U.S. 131, 141 (1986) (ban on import of certain species of minnows not a violation of the Commerce Clause because it was the only way for Maine to protect its natural environment from parasites). In *Newfound*, the Supreme Court held that the Maine statute violated the dormant Commerce Clause in the same way that any discriminatory regulation does. 520 U.S. at 574-75 ("A State's 'power to lay and collect taxes, comprehensive and necessary as that power is, cannot be exerted in a way which involves a discrimination against [interstate] commerce.'") (citing *Pennsylvania v. West Virginia*, 262 U.S. 553, 596 (1923)).

The Town of Berlin advocates essentially the same position that Maine took in *Newfound*. By arguing that the term "public use" in our statute means a use that principally benefits Vermonters, the Town is arguing for a facially discriminatory interpretation of § 3802(4). By limiting the tax exemption to charities that principally serve Vermont, we would be discriminating against out-of-state recipients of IPP's services. See *Fulton Corp. v. Faulkner*, 516 U.S. 325, 333 (1996) (statute facially discriminatory, in part because it tended "to discourage domestic corporations from plying their trades in interstate commerce."). "Once a

state tax is found to discriminate against out-of-state commerce, it is typically struck down without further inquiry." *Chem. Waste Mgmt., Inc. v. Hunt*, 504 U.S. 334, 342 (1992). We decline to interpret "public use" in a way that discriminates against persons who receive IPP's services outside Vermont.

The Town argues that we can distinguish *Newfound* because the services in this case are all rendered out of state, and, thus, the case is more like *Board of Education of Kentucky v. Illinois*, 203 U.S. 553 (1906), a decision relied upon heavily by Justice Scalia in dissent in *Newfound*. As the majority concluded in *Newfound*, the key factor in *Board of Education of Kentucky* was that the taxpayer there was an out-of-state corporation and not, as in *Newfound* and here, a corporation incorporated in the state giving the tax exemption. 520 U.S. at 591 n.27. In any case, IPP does not seek a tax exemption for service facilities located out of state. The issue is whether its administrative office located in Vermont will receive a tax exemption if the nonprofit corporation serves primarily Vermont residents and no exemption if it does not. The issue is the same as in *Newfound*.

The Town's second argument is that the parcel should not be exempt because it is not used for direct services, and the out-of-state property used for direct services is virtually all subject to property tax. "In applying the general exemption contained in 32 V.S.A. § 3802(4), this Court has consistently held that the crucial factor is the primary use to which the property is put." *Medical Ctr. Hosp. v. City of Burlington*, 152 Vt. at 615, 566 A.2d 1354 (footnote omitted). The Town argues that the primary use of the parcel in question is essentially the back office functions of IPP, which the Town claims are not for the benefit of the public. As far back as *Gifford Memorial Hospital v. Town of Randolph*, 119 Vt. 66, 118 A.2d 480 (1955), we have said that "[r]eal es-

tate used for purposes directly connected with the running of" a charitable institution is exempt from taxation. *Id.* at 72, 118 A.2d at 484.

The Town's argument is the same as the arguments we rejected in *Medical Center Hospital* and *Shelburne Museum, Inc. v. Town of Shelburne*, 129 Vt. 341, 278 A.2d 719 (1971). See also *Burr & Burton Seminary*, 172 Vt. at 439-40, 782 A.2d at 1154. In *Medical Center Hospital*, the City of Burlington argued that several hospital administrative offices and a parking lot were not exempt from tax because they were not sufficiently "directly connected" to the operation of the hospital. We rejected that argument because the hospital could not run without administrative offices and a parking lot. *Medical Ctr. Hosp.*, 152 Vt. at 624-25, 566 A.2d at 1359. In *Shelburne Museum*, the Town of Shelburne argued that two houses on the museum property were likewise not exempt from tax under § 3802(4). We held that one house, where the museum director lived, was exempt because the director was required to live in the house, he made himself available at all times, and he performed many of his job duties there. 129 Vt. at 344, 278 A.2d at 721. The landscaper's house was not tax exempt because the museum did not require the landscaper to live there, and he did not do any work in the house for the museum. *Id.* at 345, 278 A.2d at 721. As the trial court noted in its declaratory judgment, the use of the museum director's house is "essentially identical to the bookkeeping, payroll and executive functions which [IPP] conducts on the property in question."

The Town urges us to distinguish this case because all the service delivery property is located in other states and is virtually all subject to taxation. As we held above, we cannot find support in the statute for a distinction based on the location of the service delivery and believe, as in *Newfound*, that the real effect of such a distinction is to impermissibly

determine the availability of a tax exemption based on the residence of the beneficiaries.

We also cannot find in the statutory language grounds for denial of an exemption for administrative property that otherwise meets the *American Fly Fishing* test because the service delivery property is subject to taxation. As the stipulated facts show, IPP is paying property taxes on its service delivery property because it is rented and not owned by IPP. In the one case in which IPP owns the service delivery property, it is tax exempt. It would be illogical to judge the tax exempt status of owned property on whether other property used by the nonprofit corporation is owned or rented.

*Affirmed and remanded for determination of appropriate relief.*