2005 VT 16

**Our Lady of Ephesus House of Prayer, Inc. v. Town of Jamaica**

[869 A.2d 145]

No. 04-001

Present: **Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed January 28, 2005

*Christina Reiss* of *Gravel and Shea*, Burlington, for Plaintiff-Appellant.

*Robin Stern* of *Potter Stewart, Jr. Law Offices, P.C.*, Brattleboro, for Defendant-Appellee.

¶ 1. **Dooley, J.** Plaintiff, Our Lady of Ephesus House of Prayer, Inc. (OLEHOP), appeals a superior court judgment that declined to increase the portion of plaintiff's property exempt from property taxation beyond the amount determined in a previous ruling. OLEHOP argues that all of its property is exempt as either a pious or public use. We affirm.

¶ 2. OLEHOP is a nonprofit corporation organized in Vermont and granted tax-exempt status as a church under § 501(c)(3) of the Internal Revenue Code by the U.S. Internal Revenue Service (IRS). Mary and Donald Tarinelli incorporated OLEHOP after visits to a shrine at the last residence of Mary, the mother of Christ, in Ephesus, Turkey. The Tarinellis deeded OLEHOP 81.7 acres of land, subdivided from the land surrounding their own residence, in the Town of Jamaica. A private road serves a common driveway for both the Tarinellis' house and OLEHOP's property.

¶ 3. Plaintiff's bylaws describe it as a "private institution which exists for the purpose of nurturing the spiritual growth and development of all those who come into association for religious services, periods of meditation, and spiritual retreats." In OLEHOP's applica-

tion to the IRS for tax-exempt status, it represented itself as a church without membership and open to persons of all faiths. Plaintiff further indicated that it holds services for weddings, Stations of the Cross, rosary, catechism, and occasional meetings for visiting priests. OLEHOP described its ecclesiastical government as "Catholic Faith — this church does not have hierarchy."

¶ 4. There are several buildings on OLEHOP's property, including a main barn, a smaller barn, three sheds and an abandoned sugarhouse. In 2001, the west end of the main barn was converted into a small chapel. In 2002, OLEHOP began work on a second, larger chapel next to the smaller one, and this work was largely completed in 2003 although the chapel remains unheated. Another part of the barn served as an indoor riding ring, and, following the collapse of the roof in this area, the space has been converted into outdoor parking. Also, the stable area in the barn was converted into room units with bathrooms, and above that two units were constructed for visiting priests. Next to the small chapel is a meditation garden and pathway with the Stations of the Cross.

¶ 5. The main part of OLEHOP's property is open and undeveloped. Approximately 22.8 acres consists of fenced fields and pastures. The remaining acreage is wooded, with an extensive network of bridle trails running through it. Some of this woodland was sugared in the past.

¶ 6. The Jamaica listers set plaintiff's property at $511,700 in 2000, and plaintiff grieved the assessment, claiming the entire property was exempt because it was a religious society. In response, the listers adjusted the assessment to $341,500, and plaintiff filed for a declaratory judgment in superior court. In that action, the court accepted that the property was used for "pious" purposes, a prerequisite for exemption from property taxation under 32 V.S.A. § 3802(4), but further concluded that a limiting provision, 32 V.S.A. § 3832(2), allowed only part of the property to be exempt: a small portion of the barn renovated as a modest chapel, its lawn, the meditation garden and the pathway containing the Stations of the Cross. Accordingly, the court granted plaintiff an exemption for ten percent of the barn's total value and its accompanying well and septic system, and for six acres containing the garden, lawn, and Stations of the Cross. The total exemption was $38,494, and the resulting property value subject to tax was $473,206.

¶ 7. OLEHOP then undertook further renovations to the property, adding the large chapel, the room units and the parking area as

described above, and sought another declaratory judgment, asking the court to reexamine the proportion of the property exempt from property taxes in light of the changes. The renovations were incomplete in 2002 at the listers' assessment, but were "substantially complete" when the court issued its order in 2003.

¶ 8. In this second proceeding, plaintiff advanced a new theory. Plaintiff argued that it was not a "religious society," under the operative language in the limitation of 32 V.S.A. § 3832(2), and that all of its property should be exempt under the "public use" exception of 32 V.S.A. § 3802(4). In the alternative, OLEHOP argued that even if it was a "religious society" engaged in pious uses, it was entitled to more than a ten percent property tax exemption.

¶ 9. The court found that there was no basis to exempt plaintiff's entire property. Specifically, the court rejected plaintiff's claim that it is not a religious society. The court did not articulate a definition for a religious society and acknowledged that the term was ambiguous. It found, however, that "the Legislature must have intended to include any organization which, as Plaintiff did here, represented itself as a 'church' to the Internal Revenue Service." Although OLEHOP argued that all of its property should be exempt as a "public use," the court rejected this claim because the property was unquestionably being used for pious purposes. Further, the court found that the limitations of § 3832(2) would apply regardless of whether the use was defined as public or pious because the real estate is "owned or kept by a religious society." The court denied plaintiff's request to expand the tax exemption from the 2001 order, finding that, even considering the changes made to the property, no greater proportion of OLEHOP's property was eligible for exemption.

¶ 10. We view the trial court's factual findings in the light most favorable to the party prevailing below and will set them aside only for clear error. *Brown v. Whitcomb*, 150 Vt. 106, 109, 550 A.2d 1, 3 (1988). Our review of questions of law is nondeferential and plenary. *Vt. Alliance of Nonprofit Orgs. v. City of Burlington*, 2004 VT 57, ¶ 5, 177 Vt. 47, 857 A.2d 305. Issues of statutory construction are questions of law and, thus, subject to a nondeferential standard of review. *State v. Koch*, 169 Vt. 109, 112, 730 A.2d 577, 580 (1999).

¶ 11. We divide OLEHOP's appellate issues into two categories: those that would result in a determination that all of its property is exempt from taxation, and those that would increase the share of its exempt property. We begin with the first category.

¶ 12. OLEHOP's main argument is that it is not subject to 32 V.S.A. § 3832(2), primarily because it is not a "religious society," but also because its real estate is sequestered and used for both public and pious uses. That subsection provides:

> The exemption from taxation of real and personal estate granted, sequestered or used for public, pious or charitable uses *shall not be construed as exempting*:
>
> . . . .
>
> (2) Real estate owned or kept by a religious society other than a church edifice, a parsonage, the outbuildings of the church edifice or parsonage, a building used as a convent, school, orphanage, home or hospital, land adjacent to any of the buildings named in this subsection, kept and used as a parking lot not used to produce income, lawn, playground or garden and the so-called glebe lands.

32 V.S.A. § 3832 (emphasis added). This provision must be read with the applicable property tax exemption statute:

> The following property shall be exempt from taxation:
>
> . . . .
>
> (4) Real and personal estate granted, sequestered or used for public, pious or charitable uses; real property owned by churches or church societies or conferences and used as parsonages and personal property therein used by ministers engaged in full time work in the care of the churches of their fellowship within the state . . . .

*Id.* § 3802(4).

¶ 13. As set out above, this argument represents a change from OLEHOP's position in 2001 that resulted in the declaration that ten percent of the barn's value and a small portion of the acreage was exempt from property taxation. Under OLEHOP's current argument its real property is exempt under § 3802(4) as "real . . . estate granted, sequestered or used for public, pious or charitable uses," but the exemption is not limited under § 3832(2) because the limitation applies to "real estate owned or kept by a religious society" and only if the use creating the exemption is solely "pious." *Id.* § 3832(2). OLEHOP submits that it is not a religious society because it does not "have a membership, established vows or tenets, and does not engage in the

teaching or indoctrination of either the Board of Trustees or the members of the public which visit the Property." It submits that the use is public because any member of the public can use the chapel and grounds to meditate, contemplate or pray. We find that plaintiff is a religious society and its use is subject to the exemption limits of § 3832(2).

¶ 14. We must consider OLEHOP's arguments in light of the statutory scheme designed by the Legislature. Our primary goal in interpreting a statute is to give effect to the Legislature's intent. *Town of Killington v. State*, 172 Vt. 182, 188-89, 776 A.2d 395, 400-01 (2001). If terms are unambiguous we use the plain meaning, but "we will not enforce the common and ordinary meaning of statutory language if doing so would render the statute ineffective or lead to irrational results." *Id.* Furthermore, in construing tax exemptions, the burden is on the person claiming the benefit of the exemption, *In re Aloha Found., Inc.*, 134 Vt. 239, 240, 360 A.2d 74, 75-76 (1976), and the exemption statute must be strictly construed against that person. *In re Abbey Church*, 145 Vt. 227, 229, 485 A.2d 1263, 1264 (1984).

¶ 15. Our main precedent on the interrelationship between the property tax exemption in § 3802(4) and the limitation in § 3832(2) is *In re Abbey Church*. In *Abbey Church*, we rejected the argument that § 3832(2) was an expansion of § 3802(4)'s general terms. 145 Vt. at 229, 485 A.2d at 1265. The issue in *Abbey Church* was whether a private individual, who owned property leased to a church, could claim the exemption from property taxation because the property was "kept" by the church as provided by § 3832(2). We held that the exemption was unavailable because § 3802(4) did not apply unless the property was owned by a charitable organization. *Id.* at 230, 485 A.2d at 1265. In response to the argument under § 3832(2), we held that this section limits the scope of § 3802(4) and cannot create a right to an exemption independent of § 3802(4). *Id.* at 229, 485 A.2d at 1265; see 32 V.S.A. § 3832 (prefacing the list of exceptions for property tax exemption with: "[t]he exemption from taxation of real and personal estate granted, sequestered or used for public, pious or charitable uses *shall not be construed as exempting*") (emphasis added).

¶ 16. This interpretation is consistent with our rule of construction that "[w]here two statutes cover the same subject and one is more specific than the other, we harmonize them by giving effect to the more specific provision according to its terms." *Cent. Vt. Hosp., Inc. v. Town of Berlin*, 164 Vt. 456, 459, 672 A.2d 474, 476 (1995). Also, newer statutes will be enforced over older statutes, if there is a conflict. *Id.*

Further, we earlier held that the purpose of § 3832 was to respond to "a growing complaint about the removal from taxation of real estate held for tax exempt purposes." *Troy Conference Acad. v. Town of Poultney*, 115 Vt. 480, 490, 66 A.2d 2, 9 (1949).

¶ 17. As did the trial court, we need deal only briefly with the argument that because OLEHOP admits the public generally, it is not subject to the limitations of § 3832(2). This section specifically provides that its limitations apply to property whether it is sequestered or used "for public, pious *or* charitable uses." 32 V.S.A. § 3832(2) (emphasis added). Thus, under the language's plain meaning, it does not matter whether its use is exempt because it is public or pious. In either case, if OLEHOP is a religious society, the extent of its tax exemption must be determined under § 3832(2).

¶ 18. We must then review the trial court's determination that OLEHOP is a religious society. This is a mixed question of fact and law — the factual determination will be overturned only if clearly erroneous; the review of the legal conclusion is plenary. *MacDonough-Webster Lodge No. 26 v. Wells*, 2003 VT 70, ¶ 17, 175 Vt. 382, 834 A.2d 25. We will reverse the superior court decision only if OLEHOP is not a religious society as a matter of law.

¶ 19. The term religious society is quite broad. "Society" is defined as "[a]n association or company of persons united by mutual consent, to deliberate, determine, and act jointly for a common purpose." Black's Law Dictionary 1396 (7th ed. 1999). Religious is defined as "having or showing belief in and reverence for God or a deity." American Heritage College Dictionary 1153 (3d ed. 1997). Therefore, by these dictionaries, a religious society would encompass any association of persons united in a common purpose through their belief in God or a deity.

¶ 20. We recognize that the term "religious society" has been used for centuries. The second sentence of Chapter II, § 68 of the Vermont Constitution provides:

> All religious societies, or bodies of people that may be united or incorporated for the advancement of religion and learning, or for other pious and charitable purposes, shall be encouraged and protected in the enjoyment of the privileges, immunities, and estates, which they in justice ought to enjoy, under such regulations as the general assembly of this state shall direct.

To a very limited degree, they are specially regulated by chapter 13 of Title 11, and § 1501 refers to such societies as having members.

¶ 21. OLEHOP argues that it is not "religious" within the meaning of § 3832(2) because it does not have established vows or tenets and does not engage in teaching or indoctrination. The superior court rejected this position largely based on OLEHOP's filing with the IRS that it was a church affiliated with the Roman Catholic religion. We also note that in OLEHOP's articles of association, filed with the state, it wrote that it is "organized exclusively to provide facilities for the personal growth of individuals through reflection and prayer in the Roman Catholic tradition." Further, in its grievance to the board of listers on July 16, 2002, OLEHOP claimed that it was a "not-for-profit religious organization established for the purpose of providing a religious house of prayer." Although these self-representations are not determinative, the superior court could rely upon them in reaching its own conclusion about the nature of the organization.

¶ 22. Moreover, OLEHOP's words are supported by its undisputed activities. As OLEHOP acknowledged in its brief to this Court, "[t]he evidence establishes that OLEHOP uses its sacristy, larger chapel, smaller chapel, visiting priest's quarters, Stations of the Cross, replica house, meditation garden and adjoining parking lot for pious purposes on considerably more than a de minimus basis." OLEHOP has a chapel with pews and "artifacts associated with religious worship."

¶ 23. Just as the fact-finding is against OLEHOP's position, we view its definition of "religious" in § 3832(2) as too narrow. OLEHOP's lack of formal dogma does not prevent it from being a religious society. See *Lamad Ministries, Inc. v. Dougherty County Bd. of Tax Assessors*, 602 S.E.2d 845, 853 (Ga. Ct. App. 2004) ("It is not the number of worshipers or the frequency of worship, but the primary use that defines a place of worship. A place of worship is no less a place of worship, because it allows all to freely worship as they believe or chose [sic] and does not impose a dogma or ritual."); *Goodwill Home & Missions, Inc. v. Garwood Borough*, 658 A.2d 1330, 1333-34 (N.J. Super. Ct. App. Div. 1995) (finding that a group conducting religious services and accepting persons of all denominations constituted a religious congregation); 2 T. Cooley, The Law of Taxation § 742, at 1552 (4th ed. 1924) ("In order to be exempt as a 'religious' society, it is not necessary that the sole purpose be public worship in a church, and it has been held that the exemption includes a publishing house

printing and distributing religious books."). OLEHOP's operation is based on a "belief in and reverence for God," as the dictionary definition provides.

¶ 24. We also reject the argument that OLEHOP cannot be considered a society because it has no members. To the extent members are needed, OLEHOP has members sufficient to be considered a society. In this respect, the case is very similar to *In re Estate of Curtis*, 88 Vt. 445, 92 A. 965 (1915). *Curtis* involved inheritance taxes under a statute that exempted legacies to an in-state "charitable, educational or religious society or institution." 88 Vt. at 448, 92 A. at 966. The testatrix left a sum of money to three trustees to hold and invest until it reached a certain sum and then to expend it to aid young women and men to obtain an education. This Court posed the issue as whether "the trustees were at liberty to become, and by their action since have become, a society within the meaning of the statute to receive and administer the trust." *Id.* at 451, 92 A. at 967-68. Using a broad definition of a society as set out above, the Court held that the trustees were a society:

> If the individuals named in the will as trustees had voluntarily associated themselves for the purpose of collecting funds to aid needy boys and girls in securing an education or if the legacy in question had been given as a foundation of a society thereafter to be formed for that purpose and they had associated themselves in accordance with the provisions of the will to receive the legacy, no one would question but that in so doing they had formed a charitable association or society. In that case their right to receive a legacy for the purpose of their association would not be taxable under the statute in question. . . .
>
> We hold that under the provisions of this will the board of trustees are a charitable society within the meaning of the exemption clause of the statute, and that they are entitled to receive the legacy . . . exempt from the inheritance tax.

*Id.* at 452-53, 92 A. at 968.

¶ 25. We recognize that *Curtis* was based, in part, on a liberal construction of the statute to protect the charitable purpose of the legacy. *Id.* at 450, 92 A. at 967. Here, we must narrowly construe the tax exemption, and a broad construction of "society" is consistent with this purpose. If the three trustees in *Curtis* are a society as decided in

that case, the seventeen trustees of OLEHOP are equally a society under the broad definition of the term.[1]

¶ 26. In reaching our conclusion that OLEHOP is a religious society, we are also influenced by an inability to ascertain a legislative intent consistent with OLEHOP's definition of religious society. Under OLEHOP's interpretation of the language, it is entitled to a property tax exemption where a traditional church occupying the same space, with the same uses, would not be entitled to the exemption. While we understand that OLEHOP may operate differently from a traditional church, we discern no differences that would affect tax exemption policy. Thus, in keeping with the relatively broad terminology used in describing entitlement to some exemption under § 3802(4), we conclude that we should broadly construe § 3832 to complement the entitlement language. See *Experiment in Int'l Living, Inc. v. Town of Brattleboro*, 127 Vt. 41, 45, 238 A.2d 782, 785 (1968) ("[O]ur statutes relating to tax exemption must be construed as parts of one system."), *overruled on other grounds by Am. Museum of Fly Fishing, Inc. v. Town of Manchester*, 151 Vt. 103, 557 A.2d 900 (1989).

¶ 27. Although OLEHOP supports its definition in part with cases from other jurisdictions, we find that the decisions support the conclusion we have reached. Probably the most similar decision is *Institute in Basic Life Principles, Inc. v. Watersmeet Township*, 551 N.W.2d 199, 204 (Mich. Ct. App. 1996), in which the court found that an organization conducting Biblical seminars was a "religious society" within the meaning of the property tax exemption statute. The court defined religious society as an organization whose "predominate purpose and practice include teaching religious truths and beliefs," and concluded that the statute does not require "religious society" to have members, noting in part that the Nonprofit Corporation Act allows nonprofit corporations to be organized without members. 551 N.W.2d at 203-04. The court reasoned:

> [N]othing within [the statute] requires that a religious society have members. This narrow interpretation of the statute, in reliance on out-of-state authority, precludes exemptions for property owned by ecumenical religious societies, such as

---

[1] A board of trustees list was presented to the trial court. It shows seventeen people, but twelve entries, the difference reflecting the listing of husband and wife at the same address in five entries. Even if there are only twelve trustees, our conclusion would be the same.

petitioner, even though the property is used for teaching religious beliefs and truths. The Tax Tribunal's definition further excludes from exemption religious entities with only loose affiliations with organized religions. Although petitioner may not fall within the traditional definition of a religious society, that does not mean that it is not entitled to an exemption as a religious society under the house of public worship exemption.

*Id.* at 204.

¶ 28. In *World Evangelistic Enterprise Corp. v. Tracy*, a Christian radio broadcast facility applied for tax exemption as a "'house[] used exclusively for public worship,'" arguing that its broadcast center was used to encourage public worship. 644 N.E.2d 678, 680 (Ohio Ct. App. 1994) (quoting Ohio Rev. Code Ann. § 5709.07(2)). In holding for the broadcast corporation, the court invoked a constitutional provision against giving preference to any religious society. In its opinion, the court noted that the term "society" traditionally "involved a community of persons living and worshiping together" and acknowledged that "[r]adio broadcasts of religious programs do not constitute an institutionalized church, which is the traditional form of religious society." *Id.* at 681. It concluded, however, that "for purposes of the tax exemption concerned, the test does not concern the form of a religious society but the fact of its existence." *Id.* The court held that the statute

> must accommodate a structure or facility that is used exclusively or primarily to propagate a religious message to persons who receive that message for a worshipful purpose. Those who engage in that activity constitute a form of religious society, whether they are gathered where the religious message originates or are dispersed elsewhere.

*Id.*

¶ 29. Just as in *Watersmeet Township* and *Tracy*, OLEHOP may not meet the traditional concept of a religious society, but it meets a fair definition of that term consistent with its purposes. As expressed in *Tracy*, our concern is not whether its form is traditional, but whether it exists. OLEHOP is an association of people that are united in their common purpose of providing a place of prayer and worship and are motivated to do so through their belief in God.

¶ 30. We turn now to OLEHOP's arguments that would increase the share of its property found exempt. In this category, OLEHOP argues that even if it is considered a religious society under the statute, the

superior court erroneously applied a quantum of use test to determine which portion of plaintiff's property could be properly allocated as "pious." It further argues that the court erred in not finding a greater portion of the property exempt in light of the modifications made by OLEHOP since the 2001 adjudication. Before we examine these arguments, we must explain the unusual procedural circumstances involved in this case.

¶ 31. Although OLEHOP's declaratory judgment action generally sought a declaration that its property was exempt from property taxation, its factual statement made it clear that the action was, in essence, an appeal of the Town's 2002 assessment. OLEHOP itemized the changes in the property's use as of the complaint's date of the filing, September 23, 2002. The case was heard almost a year later in August 2003. The court's judgment was simply "petition for declaratory judgment is denied," leaving in place the 2002 assessment.

¶ 32. In its 2001 decision, the superior court evaluated OLEHOP's use of each part of its property. Relying upon *Governor Clinton Council, Inc. v. Koslowski*, 137 Vt. 240, 249, 403 A.2d 689, 695 (1979), the court held that a use must be substantial to qualify for property tax exemption. This holding was particularly challenging for OLEHOP because it was slowly engaged in a process of converting property used for housing and riding horses into its religious retreat. Thus, of the structures on the property, the court found that only a portion of the main barn was used for pious purposes consistent with § 3832. Apparently with agreement of the parties, the court chose to divide the value of the barn building, allowing an exemption for the percentage of the barn actually being used for uses exempt under § 3832(2). It found the authority to divide the value of a building in *Medical Center Hospital v. City of Burlington*, 131 Vt. 196, 199, 303 A.2d 468, 470-71 (1973).[2]

---

[2] In *Medical Center Hospital*, we held:

> The critical question for determining whether property is entitled to a charitable or public use exemption, under the provisions of 32 V.S.A. § 3802(4), is the use to which the property is put, — not its ownership. It is the primary as distinguished from an incidental use of the property that determines whether it is exempt from taxation.

> While the precise question has not, to our knowledge, been heretofore presented to this Court, it has been held that where property of a tax exempt institution is devoted partly to public uses, a building may be divided, for the purpose of taxing that part of it engaged in business use and exempt that part devoted to public use. In the case of *Chapman v. Draughons School of*

¶ 33. Although OLEHOP's complaint did not state so, it made clear at the bench trial that it wanted to revisit the 2001 allocation decision in light of the property's new construction if it did not prevail on its argument that the entire property was tax exempt. Neither OLEHOP nor the Town sought to revisit the court's approach of dividing the value of the main barn.

¶ 34. The issues presented to the court caused uncertainty about the proper procedure. Relying on our precedent that a property owner claiming a property tax exemption could bypass the assessment appeal procedure and bring a declaratory judgment action, see *Subud of Woodstock, Inc. v. Town of Barnard*, 169 Vt. 582, 583, 732 A.2d 749, 750 (1999) (mem.); *Gifford Mem'l Hosp. v. Town of Randolph*, 119 Vt. 66, 70, 118 A.2d 480, 483 (1955), OLEHOP insisted that its challenge was a declaratory judgment action only. This position was of little consequence in OLEHOP's action for declaratory judgment in response to the 2001 listing because OLEHOP used the administrative appeal process for that year and the declaratory judgment action was filed in superior court within the time limit for an appeal. There was a consequence in the declaratory judgment action to the 2002 listing, however, because OLEHOP, and then the Town, introduced evidence of structural modifications, and use, without regard to when these occurred. Eventually, the evidence moved into how the Town assessed the property in 2003, although some of OLEHOP's claims were not presented to the listers even in 2003.

¶ 35. Our statutory scheme requires the listers to assess taxable property as of April 1 for the ensuing year. 32 V.S.A. § 3651; *Robtoy v. City of Saint Albans*, 132 Vt. 503, 505, 321 A.2d 45, 47 (1974). There is no statutory authorization for a rebate if property becomes exempt from taxation after that date but within the same tax year. Thus, under the 2001 holding, the question for OLEHOP and the Town was the

---

*Business*, 287 P.2d 903 (Okl. 1955), it was held that when an exempt entity uses nine floors of an eleven story building for exempt purposes and leaves two floors for commercial use, two-elevenths of the property's value is subject to taxes and nine-elevenths is exempt.

131 Vt. at 199, 303 A.2d at 470-71 (citations omitted). The evidence was not present to perform the allocation in *Medical Center Hospital* so we could not perform the required analysis. None of our decisions since have applied an analysis that allocates space within a building between exempt and nonexempt. We do not decide whether such an allocation was appropriate in this case because no party has contested the decision to allocate the space in the large barn.

value of the property not exempt from taxation on each April 1, as OLEHOP continued its modification of the buildings and the uses of the property. Under these unique circumstances, each annual determination involves a combination of exemption and assessment determinations. We conclude that to maintain the integrity of the assessment and review process, specifically to give the listers the opportunity to inspect and assess the property on the relevant date, OLEHOP must first go through the assessment review process and then use an appeal to contest that assessment decision, including the portion of exempt property. See 32 V.S.A. §§ 4222 (grievance of listers' assessment), 4404 (appeal to board of civil authority), 4461 (appeal from board to director or superior court). Indeed, if we do not authorize and require use of this process, OLEHOP will have to file a declaratory judgment action each year to arrive at an enforceable allocation for that year.

¶ 36. In this case, based on its complaint and proposed findings of fact, OLEHOP contested only the 2002 tax assessment. Although evidence of structural modifications and new uses after that date was introduced, we do not believe that this evidence changed the fundamental nature of the case from an appeal of the 2002 assessment. Therefore, we reach only questions pertaining to facts presented at the time of the 2002 assessment.

¶ 37. We now reach OLEHOP's arguments that additional parts of its property should be found exempt: (1) the second, larger, chapel in the barn; (2) the new parking area created after part of the barn roof collapsed; and (3) the apartments used for visiting clergy. We summarily reject OLEHOP's arguments with respect to the first two items. Both were constructed after April 1, 2002, and, thus, would not be considered in the 2002 tax assessment that was before the court.

¶ 38. We affirm the superior court's decision with respect to the apartments. Mary Tarinelli testified that some of these rooms are reserved for visiting clergy while others are open to the public. We agree with the trial court and "cannot interpret § 3832(2) to cover as a 'parsonage' the rooming units occasionally reserved for visiting clergy." A parsonage is commonly defined as a residence for an ordained minister who is serving a congregation's needs. *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Ada County*, 849 P.2d 83, 90 (Idaho 1993) (citing cases); *St. John's Evangelical Lutheran Church v. City of Bay City*, 319 N.W.2d 378, 382 (Mich. Ct. App. 1982). OLEHOP's new apartments cannot be construed as a

parsonage because visiting clergy are not in residence on a permanent basis and do not conduct pastoral duties or minister to a congregation.

¶ 39. Finally, we come to OLEHOP's argument that the court improperly used a "quantum-of-use" test to determine whether particular parts of the property were tax exempt. Plaintiff submits that once the court determines an organization uses property primarily for pious purposes, there should be no examination of the magnitude of that use. OLEHOP alleges that the trial court engaged in an improper subjective analysis of whether its activities were sufficiently pious, frequent or substantial to qualify for tax exemption and that this analysis constituted excessive entanglement in violation of First Amendment protections. Specifically, OLEHOP argues that courts should not be arbiters of what uses are sufficiently pious to qualify for the exemption.

¶ 40. OLEHOP did not raise this constitutional argument in the trial court, and we conclude that it was not preserved. In addition, we note that the U.S. Supreme Court long ago affirmed states' ability to provide property tax exemption for religious institutions. *Walz v. Tax Comm'n of N.Y.*, 397 U.S. 664, 676-77 (1970). In the past, we have rejected the notion that simply because the court must decide whether an organization fits within a statutorily defined exemption there is necessarily entanglement. *Chittenden v. Waterbury Ctr. Cmty. Church, Inc.*, 168 Vt. 478, 487, 726 A.2d 20, 26-27 (1998) ("[I]f a court's analysis and decision-making constituted 'excessive government entanglement' then religious institutions would never have recourse in court as to any dispute in which their religious status was in issue."). Even under OLEHOP's analysis, the court must determine the "primary use" of property to determine if it is an exempt use. *Inst. of Prof'l Practice, Inc. v. Town of Berlin*, 174 Vt. 535, 538, 811 A.2d 1238, 1242 (2002) (mem.). This property-specific inquiry is mandated by § 3832(2), which does not provide a blanket exemption for all property put to pious use, but instead limits the exemption to property used for specific purposes.

¶ 41. OLEHOP's argument is based primarily on the superior court's reliance on *Governor Clinton Council, Inc.*, 137 Vt. at 249, 403 A.2d at 695, for the proposition that a use must be substantial to be considered for purposes of determining exemption from property taxation. To the extent the court employed a substantial use test, it was with respect to the additional parking area and the second chapel, property modifications not in place on April 1, 2002. Thus, even if OLEHOP had properly preserved this argument, it was premature.

¶ 42. As we stated above, the court's judgment in this case was "petition for declaratory judgment, DENIED." As we have explained the scope of the action above, we conclude that the court's entry was correct.

*Affirmed.*