## STATE OF VERMONT
## ENVIRONMENTAL COURT

|  |  |
|---|---|
| Northeast Kingdom Community Action, Inc. **}** Conditional Use Application **}** | Docket No. 123-6-07 Vtec |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| Northeast Kingdom Community Action, Inc. **}** Site Plan Application **}** | Docket No. 128-6-07 Vtec |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| Northeast Kingdom Community Action, Inc. **}** Zoning Permit Application **}** (Appeals of Curtis and others) **}** **}** | Docket No. 152-7-07 Vtec |

### Decision on the Merits

These appeals arise out of three related decisions by the City of Newport ("City") Zoning Board of Adjustment ("ZBA") and Planning Commission to grant conditional use approval, site plan approval, and a zoning permit to the original applicant—Appellee Northern Community Investment Corporation ("NCIC")—for the construction of an education center for preschool children and teens on property located at 363 Bluff Road in Newport. When NCIC transferred its interest in the proposed project and project site, this Court granted NCIC's motion to substitute Northeast Kingdom Community Action, Inc. ("NEKCA"), as the Appellee in these three municipal land use proceedings.

Neighbors Paul and Joan Curtis, George M. and Shelly Azur, Douglas and Lois Jenks, Francis L. and Amelia A. Ormsbee, William D. and Debra Prue, Clark W. and Linda Curtis, and Norman Thurston ("Neighbors") all appealed each of the approvals in the three municipal proceedings; they each appeared pro se in these proceedings. Appellee/Applicant NEKCA ("Applicant") was represented at trial by Charles D. Hickey, Esq.; the City of Newport has been represented throughout these proceedings by William Boyd Davies, Esq. Interested Persons John K. and Harriet G. Hall have also entered their pro se appearances in these three appeals.

### Procedural Background

There have been a fair amount of pre-trial motions filed in each of these three Dockets, all of which has resulted in either a decision or entry order being issued by the Court. When the

parties' negotiations and the Court's rulings on pre-trial motions did not fully dispose of all legal issues, these three consolidated appeals were heard over the course of a two-day bench trial. The Court also conducted a site visit prior to the trial, at the invitation of the parties, to help put into context the evidence that was ultimately admitted at trial.

One week prior to trial, Neighbors filed a motion for summary judgment. The Court deferred its decision on that motion until after the close of evidence at the trial the following week. At the close of evidence, the Court ruled on the record that the applicable provisions of the Newport City Zoning Bylaw ("Bylaw") prohibit an entry of summary judgment in Neighbors' favor. The Court specifically noted that Bylaw § 326 operates only to restrict the placement of gasoline stations "within three hundred feet of any lot occupied by a school, hospital, library or religious institution." Id. § 326.01. Section 326—which only refers to restrictions on "gasoline and motor vehicle services" (noting that they "shall comply" with certain requirements)—does not operate to bar the placement of schools or other listed uses within 300 feet of a pre-existing gasoline station. Therefore, the proposed facility was not barred by operation of Bylaws § 326, even though there was a pre-existing gasoline station ("Fred's Plumbing and Heating" gas station) along Bluff Road, less than 100 feet from the proposed project site.

Neighbors' Amended Statement of Questions[1] lists a series of legal issues that encompass all three pending appeals. At the close of evidence, the Court noted that the parties appeared to only dispute three general issues: (1) the impact the project would bring to the area, due to the introduction of the additional children that would come to the project site, particularly as to the noise that those children would cause and the noise emanating from the compressor component of the project's HVAC system; (2) the traffic impacts of the project; and (3) what "area" means, as that term is used in the Bylaw's conditional use and site plan provisions. As to this third question, the Court noted at the close of the trial that in reviewing the language of the conditional use provisions of the Bylaw, it became clear that "area" meant a broad area, not simply restricted to the adjacent properties. The Court thereafter concluded the hearing by affording the parties an opportunity to file proposed findings of fact and conclusions of law. At Neighbors' request, the Court extended that filing deadline on two occasions.

---

[1] The Court allowed Neighbors to file a portion of their Amended Statement of Questions, but declined to allow the addition of a new section, entitled "Other Questions," since those Questions were deemed beyond the scope of the original appeal. See Entry Orders dated September 23, 2008, and October 14, 2008.

Based upon the evidence admitted at trial, including that which was put into context by the site visit the Court conducted with the parties, the Court renders the following Findings of Fact and Conclusions of Law:

**Findings of Fact**

**I.     General Overview and Area Description**

1.     NEKCA seeks conditional use and site plan approval, and a zoning permit, to construct two additions to a pre-existing structure at 363 Bluff Road in Newport.

2.     The subject property is located in the General Residential Zoning District ("GR District"). The NEKCA project site is close to the zoning district boundary line for the Industrial Zoning District ("IND District").

3.     A nearby gas station, operated by Fred's Plumbing and Heating, is located less than 100 feet from the NEKCA project site (on the opposite side of Bluff Road); Fred's gas station is in the IND District. Between Fred's gasoline station and the project site is a 12,000 square foot commercial facility, known as the Columbia Forest Products warehouse, which is also in the IND District. Columbia Forest Products also maintains a separate office complex in front of its commercial warehouse facility.

4.     South of Fred's gas station, Bluff Road ends at the junction with Freeman Street. South of Freeman Street, not far from the NEKCA project site, is North Country Union High School.

5.     As one travels north from the project site along Bluff Road, individual residential homes line the Road, several of which are owned and occupied by Neighbors. Most of the homes along Bluff Road, and the adjacent Willey Street (a dead-end street off of Bluff Road) are occupied by older individuals who no longer have children living with them.

6.     Just south of Fred's gas station, not far from the NEKCA project site, is a propane tank storage facility where large commercial tanks are used to store and dispense propane to delivery trucks.

7.     Travelling north, Bluff Road ends not far from the project site at the intersection with Prouty Drive. Just north of Prouty Drive (and accessed from Prouty Drive) is North Country Hospital, a regional primary medical care facility.

8.     Neighbors George and Shelly Azur own and reside in a single family home on the land immediately north of the NEKCA project site. A row of trees and a partial fence run along their common boundary line.

3

9. A 37-acre parcel of land lies to the west of the project site; it has been owned for many years by the Pine Grove Cemetery Association ("Association"), which has operated its cemetery on this parcel for many years. Several of the individual Neighbors are members of the Association.

10. The Association also owns a ten-foot strip of land between the project site and Bluff Road and an eight-foot strip of land between the project site and the adjoining Pine Grove Cemetery Road, to the south of the project site. There was no clear explanation offered at trial for why the project site parcel was made essentially land-locked when it was subdivided from other lands of the Association in 1980. However, the detriment normally associated with conventional land-locked parcels was alleviated for NEKCA and its predecessors-in-title by an easement for "the unlimited use" of the entire ten-foot and eight-foot strips of land, subject only to a restriction on the cutting of existing trees in the strips of land. See Warranty Deed from NCIC to NEKCA, admitted into evidence at trial as Exhibit 1.

11. The Association conducts funeral and burial services in its cemetery during the months of May through November; they have historically conducted thirty-five to forty services per season. Most of these services are completed in less than an hour and a half.

12. Due to the concern expressed by Neighbors that the children occupying the NEKCA facility will disturb these occasional cemetery services with their playing, yelling, and laughing, NEKCA offered at trial that any permit that may issue from these proceedings be conditioned upon a requirement that NEKCA staff move the children in doors and from the rear playground for the duration of any cemetery service, provided the Association provides NEKCA staff at the facility with sufficient notice in advance of the cemetery services.

## II. Proposed Facilities and Site Improvements

13. Once NEKCA completes an expansion of the existing structure on its property, it intends to use the new structure as an education center for preschool children and their families. The programs to be offered at the facility will include the following:

   a) licensed day care center;
   b) head start program;
   c) pre-school/EEE program; and
   d) teen parent center, to assist no more than ten teen parents with classes in parenting skills and course work needed to complete their eleventh or twelfth grade level of education.

14. The licensed day care center, head start program and pre-school/EEE program will

4

accommodate no more than sixty children, all within the ages of three to six years old. The staff employed in all programs will total no more than twenty-six employees, with no more than twenty employees on site at any one time.

15. The facility is to be known as the Newport Area Family Services Center ("Family Services Center" or "Center"). A sign measuring approximately 70" by 38" and listing the name of the facility will be secured to the side of the new structure facing Bluff Road.

16. The existing structure had previously been permitted and used as an adult day care facility. The building as it currently exists includes usable space of 3,456 square feet.

17. NEKCA proposes to increase the total usable space at the proposed facility to 11,950 square feet. This will be accomplished by the construction of two additions: one to the north of the existing structure, totaling 2,144 square feet, which will house the teen parent center, and a second to the south of the existing structure, totaling 6,350 square feet, which will house three classrooms to be used by no more than twenty children each for the three child programs listed above.

18. NEKCA also proposes to construct a playground area next to the southwesterly corner of the improved structure which will be surrounded by a plastic-coated chain link fence. There will be no gate in the fence on the westerly end of this playground, so as to limit the possibility of children coming closer to the westerly boundary with the Pine Grove Cemetery.

19. The playground area will be no closer than fifteen feet from the westerly boundary with the Pine Grove Cemetery. There currently exists on the Association property a swath of woods approximately 200 feet in width between its boundary with the NEKCA property and its open area used for burial sites.

20. Licensing and safety requirements (including fire evacuation) require the playground to have the ability to accommodate up to the maximum of sixty children that may be on site. However, NEKCA has pledged to have no more than twenty children using the playground area at any one time.

21. All four programs proposed for the Family Services Center are pre-existing and currently operated at various sites throughout the City of Newport. One main purpose of the Center is to bring these various programs under one roof, thereby affording efficiencies in the use of staff and administrative support, and providing convenience for the children and families the Center intends to serve.

22.     Family services centers such as the one proposed here are often located in residential zoning districts, where permitted.  This Center anticipates serving children of parents living in this general area or working or visiting the nearby Hospital, commercial facilities, and High School.

23.     The existing and new structures will be one story tall, with clapboard siding, and have a similar aesthetic style to the nearby homes.  This similarity in style will also be accomplished because of the three attached but separate components of the new structure.

24.     Exterior lighting on the completed structure will be downcast, so that the lighting source will not shine directly onto neighboring properties.  This lighting will only be illuminated during the operating hours for the Family Services Center.

25.     The Center will be open to provide the designated services from 7:00 AM to 7:00 PM.

26.     The project site already contains trees on its north and south boundaries that provide screening; a fence on the northerly boundary provides additional screening.

27.     Crab apple trees and other plants will be added to provide additional screening along the westerly boundary with the Pine Grove Cemetery; two trees will be added to the three existing trees along the easterly boundary near Bluff Road, all for the purpose of providing additional screening of the property from adjacent properties and oncoming traffic.

28.     The existing driveways will be realigned to provide safe ingress and egress from the Center, and to accommodate the additional structures.  A total of thirty-four parking spaces, including two handicap spaces, will be available on the site, once construction is completed.

29.     All site improvements are delineated on NEKCA's revised Site Plan, admitted into evidence at trial as Exhibit 5.

### III.     Traffic and Noise Impacts

30.     Vehicular traffic flows through the Bluff Road neighborhood to access the nearby Hospital, High School, Columbia Forest Products warehouse and office complex, and a nearby campground.

31.     Credible estimates at trial lead us to conclude that the recent historical traffic flows along Bluff Road reached as high as 294 vehicle trips for one morning and as much as 385 vehicle trips for one afternoon.

32.     The Family Services Center is unlikely to increase traffic, even at its peak hour of operation, by more than sixty-nine vehicle trips.

6

33.     Some Neighbors expressed concern about the dangers associated with pre-school children being let off by their parents and crossing through the busy traffic along Bluff Road to get to the Family Services Center. However, the interior drive and parking in the front and northerly side of the building will allow all students at the Center to safely exit vehicles while on the NEKCA project site and adjacent to the Center building.

34.     Activities at the Family Services Center, including the children playing in the playground and the operation of the Center's new HVAC system (including internal compressor and condenser), are unlikely to exceed a sound level of 70 dB, when measured at the common boundary line with the Association.

### Discussion

We are often called upon to render decisions, either based upon pre-trial motions or after conducting a merits hearing, that require us to consider somewhat complicated legal issues that necessitate a review of legal precedent from our Supreme Court or even from outside our state. The appeals before us here require something different, as there has been little dispute presented to the Court beyond the confines of the applicable Bylaw. Rather, the parties here provided sincere representations of the basis for their factual disputes, and how the applicable Bylaw provisions require us to assess the disputed facts. So, we begin and end our analysis here with the applicable Bylaw provisions.

Bylaw § 205.02 identifies the uses allowed in the GR District, both as permitted uses and those requiring conditional use approval. A "school"—defined under Bylaw § 702 as "[a]ny building or any part thereof which is designed, constructed or used for educational [purposes] or instruction in any branch of knowledge"—is a permitted use. We regard the teen parent center, which will include instruction at the eleventh and twelfth grade levels for eight to ten teen parents, as fitting within the definition of a school program and therefore a permitted use.

The licensed day care and the head start and pre-school/EEE programs also appear to fit the generalized definition for "schools," yet licensed day cares and nursery schools are specifically listed as uses permitted in the GR District, subject to conditional use approval. Our Supreme Court has recognized that "where two statutes cover the same subject and one is more specific than the other, we harmonize them by giving effect to the more specific provision according to its terms." Our Lady of Ephesus House of Prayer, Inc. v. Town of Jamaica, 2005 VT 16, ¶ 16, 178 Vt. 35 (quotation omitted). We therefore conclude that the proposed licensed

7

day care and related programs require conditional use approval. Thus, we first consider whether these programs may be permitted as conditional uses in the GR District.

**Conditional Use Review (Docket No. 123-6-07 Vtec)**

Bylaw § 505.01 establishes the standards by which conditional uses may be permitted in any Newport zoning district. The § 505.01 standards mirror the five standards established in the enabling provisions of 24 V.S.A. § 4414(3)(A). We need not review each of those standards here because, as we noted at the beginning of this Decision, we determined at the close of the trial that only two of the conditional use standards were at issue in these proceedings—namely, standard (2) regarding the impact upon the character of the affected area, and standard (3) regarding traffic on nearby roads and highways.

Traffic impacts are the easier of these two issues to address and for that reason we address it first. It is indisputable that the proposed Family Services Center, with its employees and the families dropping off up to sixty pre-school children and up to ten teen parents, will result in an increase in traffic. We found credible the estimate supplied by NEKCA that, at its peak hour, the Center will generate up to sixty-nine one-way vehicle trips. This evidence was credible in its own right, but also because it was not refuted by specific countervailing traffic estimates. We also note that some of the traffic visiting the Center will be from area families and those visiting the High School and other workplaces in the area. Given that Bluff Road already experiences a strong flow of traffic, not just from its area residents, but also from visitors to the nearby Hospital, High School, gas station, campground, and the commercial warehouse and office complex, we conclude that whatever new traffic to the area that the Family Services Center generates, it is relatively minimal and will not result in the "undue adverse effect" that Bylaw § 505.01 seeks to prevent.

We next must determine the Center's impact upon the "character of the area." Bylaw § 505.01(A)(2). In seeking to define the term "area," § 505.01(A)(2) directs that we look to the "purposes of the zoning district within which the project is located, and specifically stated policies of the municipal plan." Id. There is no "purpose" provision in the Bylaw section that defines the uses in the GR District. See Bylaws § 205.02. However, the stated "[o]bjective" of § 205.02 provides that although the GR District "is designed principally for residential development," it is also intended to accommodate "other compatible and complementing uses."

8

Id. Thus, the GR District is not exclusively restricted to residential uses; rather, this District permits other uses that complement its predominantly residential activities.

We conclude that the day care and related pre-school programs are compatible with the area and do not present the undue adverse effect upon the character of this area that § 505.01(A)(2) seeks to protect against. We therefore conclude that the day care and pre-school programs are entitled to conditional use approval and are therefore permitted uses within the GR District.

## Site Plan Review (Docket No. 128-6-07 Vtec)

Any land development project in the City, other than a one- or two-family dwelling, is required to obtain site plan approval prior to the issuance of any zoning permit. Bylaw § 507. The standards established in § 507.01(E) mirror the standards established in the enabling provisions of 24 V.S.A. § 4416. In that regard, we conclude the following:

1. The proposed parking, traffic access to the site, and proposed circulation patterns within the site for both vehicular and pedestrian travel, especially in relation to safety, are adequate and consistent with the spirit and intent of the Bylaws and the provisions of the Newport City Municipal Plan that were brought to our attention at trial. A copy of the Newport City Municipal Plan was admitted at trial as Exhibit 25.

2. The proposed landscaping, screening, and setbacks adequately protect adjacent properties from undue interference and achieve compatibility, particularly when approval is conditioned upon the requirement, offered by NEKCA, that all children be returned to an interior classroom when a funeral or burial service is being conducted between the months of May through November, provided that the Pine Grove Cemetery Association provides adequate notice in advance of the services to the on-site NEKCA Family Services Center officials or employees.

3. To the extent applicable, NEKCA is appropriately utilizing renewable energy resources.

4. Exterior lighting will be limited to downcast fixtures, so that the illuminating source will not be visible from adjacent properties and will be turned off during non-business hours, with the exception of certain security lights. These conditions will render the exterior lighting appropriate for the area.

5. As discussed above, due to the one-story design, and the use of clapboards and similar design components, the revised structures will be harmonious with adjacent uses and other uses in the surrounding area.

6. The proposed drainage was presented by NEKCA's expert, Donald Marsh. See Exhibit 11. No credible evidence was offered to contradict this, and we find Mr. Marsh's proposed drainage plans to be credible and adequate for the site and for the protection of neighboring properties.

9

7. All components of the proposed Family Services Center, if constructed and used in accordance with the revised Site Plan (Exhibit 5) and the testimony presented at trial, will be in compliance with all pertinent Bylaw provisions.

Based upon these legal conclusions, we further conclude that the proposed Family Services Center is in conformance with Bylaws § 507 and is therefore entitled to site plan approval.

## Issuance of a Zoning Permit (Docket No. 152-7-07 Vtec)

Once any City development is deemed a permitted use or entitled to conditional use approval, and is also deemed to be entitled to site plan approval, its applicants are also entitled to a zoning permit. Bylaws §§ 502, 505, and 507. Given that we have concluded that the project satisfies all necessary Bylaw provisions, we conclude that NEKCA is entitled to a zoning permit for its project.

## Conclusion

For the reasons stated above, we conclude that NEKCA's proposed Family Services Center, if constructed and operated in accordance with the Site Plan and testimony presented at trial, is composed of uses permitted in the General Residential Zoning District; the proposed teen parent program is a permitted school program under Bylaw § 205.02, and the licensed day care, head start, and pre-school/EEE programs are entitled to conditional use approval under Bylaw § 505.01.

NEKCA's revised Site Plan (Exhibit 5) conforms with all applicable provisions of the site plan review standards contained in Bylaw § 507.01(E).

This matter is remanded to the Newport City Zoning Administrator, for the sole purpose of completing the ministerial act of issuing a zoning permit to NEKCA for its proposed Family Services Center at 363 Bluff Road, all in conformance with this Decision and any unappealed provisions of the prior municipal land use determinations. The permit shall contain the following conditions:

1. The Site Plan marked as Exhibit 5 shall be submitted to the Newport City Zoning Administrator in final form, certified by its preparer. All development on the NEKCA site shall be in conformance with the finalized Site Plan.

2. The playground area shall be surrounded by a plastic-coated chain link fence (or its equivalent), with no gate in the fence on the westerly end of the playground, and the playground shall be no closer than fifteen feet from its westerly boundary with the Pine Grove Cemetery.

3. No more than twenty children may use the rear playground at any one given time.

4. If the Association provides NEKCA staff with at least twenty-four hours advanced notice of upcoming cemetery services, NEKCA staff shall move children away from the rear playground and keep them indoors for the duration of those services.

5. The existing and new structures shall be one story tall, with clapboard siding, and have a similar aesthetic style to the nearby homes.

6. Exterior lighting on the completed structure shall be downcast, so that the lighting source will not shine directly onto neighboring properties.  This lighting shall only be illuminated during the operating hours for the Family Services Center.

7. The Family Services Center shall be closed to the public between the hours of 7:00 PM and 7:00 AM.  Only certain security lights shall be allowed to operate on the property during these hours.

8. The project site shall maintain the trees on its north and south boundaries that provide screening.

9. NEKCA shall add crab apple trees and other plants to provide additional screening along the westerly boundary with the Pine Grove Cemetery.

10. NEKCA shall add two trees to the three existing trees along the easterly boundary near Bluff Road to provide additional screening of the property from adjacent properties and oncoming traffic.

11. The existing driveways shall be realigned to provide safe ingress and egress from the Family Services Center, and to accommodate the additional structures, all as shown on the finalized Site Plan.

12. By the completion of construction, a total of thirty-four parking spaces, including two handicap spaces, shall be available on the site.

13. The project shall be completed and maintained in accordance with the proposed drainage plans described by Marsh Engineering Services in Exhibit 11.

This completes the proceedings in these appeals before this Court.  A Judgment Order accompanies this Decision.

Done at Berlin, Vermont, this 16th day of June 2009.

_____
Thomas S. Durkin, Environmental Judge

11