TROY CONFERENCE ACADEMY ET AL. *v.* TOWN OF POULTNEY ET ALS.

(66 A2d 2)

February Term, 1949.

· Present: SHERBURNE, JEFFORDS, CLEARY and ADAMS, JJ. and BLACKMER, Supr. J.

Opinion filed May 3, 1949.

482

*Bloomer & Bloomer* and *Sennett & Sennett* for the defendants.

*Lawrence & O'Brien* and *J. Malcolm Williams* for the plaintiff.

SHERBURNE, J. This is a bill in chancery to restrain the defendants from assessing or collecting any future taxes with respect to a piece of real estate owned by the plaintiff and known as the "Humphrey House", and to require the repayment of taxes thereon for the year 1945, which had been paid under protest. After hearing and filing of findings of fact a decree was entered for the plaintiff, and the cause has been brought here upon exceptions by the defendants.

The findings show the following facts: The plaintiff was incorporated under the name of Troy Conference Academy in 1834, by an act of the General Assembly. Sections 6 and 9 of this act read as follows:

> "Sec. 6. It is hereby further enacted, that all necessary buildings of the institution, together with the lands to be connected therewith for the purpose of uniting manual labor with education, together with all philosophical apparatus and library of the institution, shall be exempt from taxation.
> "Sec. 9. It is hereby further enacted, That all the privileges of this act shall be under the control of this, or any future legislature, so as to alter, amend or repeal the same, at pleasure, as the public good may require."

In 1936 its name was amended to read "Troy Conference Academy And Green Mountain Junior College". It has no capital stock and is not organized or operated for profit. All its income is used for the operation, maintenance and improvement of its educational facilities. It is an educational institution, now known as a junior col-

lege, with a faculty of 26 instructors and teachers and about 40 other employees. It has about 300 students. Located on the school grounds are the usual buildings for such a school. At time of the hearing all of the available rooms in the dormitories were occupied by students, and it furnished room and board to 284 students and board alone to 18 others. In March, 1945, it purchased the so-called Humphrey property, a large house and lot located in the defendant municipalities and about 200 yards from the center of plaintiff's campus, for the purpose of making it into a home for members of the faculty, and has since maintained and supervised it. Since the fall of 1945, it has been occupied by eight members of the plaintiff's faculty, and three rooms on the first floor have been used as reception rooms. All other members of the faculty reside in homes off the campus. Although there are no class rooms in this house some instruction is given there, and meetings of students and others are held there several times each week of the school year. Students go there for individual tutoring and to confer with its occupants. It is vacant during the summer vacation. Compensation of all faculty members is figured on the basis of whether board and room is furnished, and the plaintiff's books reflect a debit entry of $400 per year against the salary of each one rooming in this house as a charge for room and board and of $160 per year for room alone. There has been a shortage of homes for rent or for sale in Poultney since prior to 1945, but it is not found that rooms for rent to faculty members were unobtainable during this period. The several defendants have never voted to exempt this property from taxation, nor have they been requested to do so in pursuance of No. 12 of the Acts of 1941.

In his decree the chancellor adjudged, among other things, that the Humphrey House is and has been at all material times a reasonably necessary building of plaintiff, and is and has been at all material times exempt from local taxation in accordance with Section 6 of plaintiff's charter.

The defendants claim that the Humphrey House is not exempt under Section 6 of plaintiff's charter, because that section is no longer effective, but has been amended and changed, first by P. L. 590, sub-sec. IV, and second by No. 12 of the Acts of 1941; that it is not exempt under P. L. 590, sub-sec. IV because rented for commercial purposes, and, if exempt under that statute, that it is taxable under the provisions of No. 12 of the Acts of 1941.

So far as here material P. L. 590 reads as follows:

"Sec. 590. The following property shall be exempt from taxation:

"IV. Real and personal estate granted, sequestered or used for public, pious or charitable uses; . . . and lands owned or leased by colleges, academies or other public schools. . . . The exemption of lands owned or leased by colleges, academies or other public schools, shall not apply to lands or buildings rented for general commercial purposes, nor to farming or timber lands owned or leased thereby, but this provision shall not affect the exemption of so-called school or college lands, sequestered to such use prior to January 28, 1911."

These provisions have been carried forward into V. S. 649, sub-sec. IV, rev. of 1947. Except for the last sentence, which was first enacted by No. 33 of the Acts of 1910, these provisions in substance have been in effect since the enactment of Section 5 of No. 16 of the Acts of 1841, and possibly much longer.

Section I of No. 12 of the Acts of 1941, reads as follows:

"Section 1. Any real property acquired after passage of this bill by any college, university or fraternity such as would be exempt from taxation under the provisions of section 590 of the Public Laws, shall be set to such institution in the grand list of the town or city in which such real property is located at the value fixed in the quadrennial appraisal next preceding the date of acquisition of such property and taxed on such valuation; provided, however, that the voters of any town or city may at any legal meeting thereof vote to exempt such property from taxation. The value fixed on such property at such quadrennial appraisal shall not be increased so long as the property is owned and used by such institution for other than commercial and charitable purposes, whether or not improvements are made thereon."

This has been carried forward into V. S. 650, rev. of 1947, but the word "charitable" in the last sentence has been amended to read "investment". Defendants claim nothing for the use of this word.

There are no express words of repeal in these statutes,

and repeals by implication are not favored. But such a repeal may result in one of two situations: (1) When the acts are so far repugnant that they cannot stand together. (2) When, though not repugnant, the later act covers the whole subject of the former and plainly shows that it was intended as a substitute therefor. *Central Vermont Railway, Inc.* v. *Hanley,* 111 Vt 425, 428, 17 A2d 249; *Magwire* v. *Village of Springfield,* 111 Vt 414, 422, 17 A2d 260; *Town of Hartland* v. *Damon's Estate,* 103 Vt 519, 528, 156 A 518, and cases cited. If there are two statutes upon the same subject which are repugnant, the later operates as a repeal of the first so far as the repugnancy exists, but no further. *Town of Hartland* v. *Damon's Estate, supra; Hogaboon* v. *Town of Highgate,* 55 Vt 412, 414. Where there are two statutes upon the same subject, the earlier being special and the later general, the presumption is, in the absence of an express repeal, or an absolute incompatibility, that the special is intended to remain in force as an exception to the general. *Washington* v. *Miller,* 235 US 422, 35 S Ct 119, 59 L ed 295. But there is no rule which prohibits the repeal by implication of a special or specific act by a general one. The question is always one of legislative intention, and the special or specific act must yield to the later general act, where there is a manifest legislative intent that the general act shall be of universal application notwithstanding the prior special or specific act. 50 Am Jur, Statutes, § 564. As applied to special charter provisions *Magwire* v. *Village of Springfield, supra,* and *City of Hartford* v. *Hartford Theological Seminary,* 66 Conn 475, 34 A 483, are illustrations of repeals by implication by general acts. In the first case a provision of a village charter was so repealed, and in the last case, a charter exemption from taxation was repealed to the extent that it exempted land leased or used for other purposes than the specific purposes of the defendant.

The term "colleges" as used in P. L. 590 includes such an educational institution as the findings show the plaintiff to be. *Willard* v. *Pike,* 59 Vt 202, 216, 9 A 907. Hence it is obvious that the exemption there generally granted is fully as extensive as that granted by Section 6 of plaintiff's charter. Under the foregoing rules of construction we are unable to say that P. L. 590 repeals that section, but before determining the intention of the Legislature in enacting No. 12 of the Acts of 1941 it is necessary to determine if P. L. 590 would exempt the Humphrey House from taxation.

Before the enactment of No. 33 of the Acts of 1910 lands

owned by a college were exempt from taxation, although held as an investment and rented for purposes not directly connected with the running of the institution. *Scott* v. *St. Johnsbury Academy,* 86 Vt 172, 174, 84 A 567. If the Humphrey House is rented for general commercial purposes, under the term of this act, it would not be exempt under P. L. 590. If not so rented, but used for purposes directly connected with the running of the institution, it would be exempt under that statute. In our determination of this question we must observe the rule that a statute providing for an exemption from taxation is to be strictly construed, although, of course, the construction must be reasonable, and not such as would defeat the purposes of the statute. *Grand Lodge of Vermont* v. *City of Burlington,* 104 Vt 515, 517, 518, 162 A 368; *Rixford Mfg. Co.* v. *Town of Highgate,* 102 Vt 1, 5, 144 A 680.

While the Humphrey House is largely a dormitory for teachers without families, it has other uses directly connected with the operation of the plaintiff institution as we have seen. New Jersey has a statute exempting from taxation buildings of colleges and schools which may be necessary for the fair enjoyment thereof, and which are devoted to the purposes of such institutions and to no other purpose. In *Hoboken* v. *Div. of Tax Appeals,* 134 NJL 594, 49 A2d 587, the residence of a college president which was also used for college purposes, such as entertaining visitors, for group meetings, meetings of the trustees, conferences with students, was held exempt. Massachusetts has a statute exempting from taxation the real estate of literary institutions which is occupied by them or their officers for the purpose for which they are incorporated. In *Phillips Academy* v. *Andover,* 175 Mass 118, 55 NE 841, 48 LRA 550, the court states that in considering whether residences of teachers are exempt regard, among other things, may be had to the situation of the institution. "If, for instance, it is so situated that desirable residences are not or may not be easily obtained, and those in charge of it are of opinion that such officers as the best interest of the institution and of those resorting to it require can be more easily obtained if the institution provides places for them to live in, and it does so, this may be taken into account in determining whether the occupancy is for the purposes for which the institution was incorporated. Or again, if with the best interests of the institution as an educational institution in view, and for the purpose of enhancing its advantages to students and of promoting discipline and good conduct and greater freedom of intercourse between

students and professors and instructors, those in charge deem it advisable that the president and professors and others connected with the institution should occupy residences in the college yard or in proximity to the college buildings, this may also be taken into account. The dominant purpose of the occupancy under such or similar circumstances may be as truly that for which the institution was incorporated, as the occupancy of buildings for recitation purposes, or for offices, or for other like purposes would be. And the occupancy does not lose what may be termed its institutional character and purpose because as incidental to it the officers and their families are provided with homes for the use and enjoyment of which by them compensation is allowed or taken into account in some manner." In *Harvard College* v. *Cambridge,* 175 Mass 144, 55 NE 844, 48 LRA 547, there were six houses, three within the college grounds and three without, occupied by professors, and kept in order and repair by the college, which were used partly for the convenience of the college and partly for the convenience of the occupant, for different college uses incident to his duties as professor, chairman of committees, dean, interviews with students and the like. When the salaries of the professors were voted they were fixed at certain amounts "and the use of house, $750," or whatever the sum might be; otherwise the professor paid no rent and had no agreement for his occupation and use of a house, but used it as such professor. It was held that the facts were competent to show that the dominant consideration in regard to the occupation of the houses by the several professors had reference to their duties as professors, rather than to the private benefit which they received in the way of houses for themselves and their families, and that the occupancy was for the purposes of the college, so that the houses were exempt from taxation. In ·*Emerson* v. *Trustees of Milton Academy,* 185 Mass 414, 70 NE 442, another similar case with respect to houses occupied by teachers, the court states: "The dominant purpose of the managing officers of the corporation, in the use of the property which they direct or permit, is often, although not always, controlling. So long as they act in good faith and not unreasonably in determining how to occupy and use the real estate of the corporation, their determination cannot be interfered with by the courts. There may be honest differences of opinion among persons of good judgment, as to whether it is wise to use real estate in a particular way for its direct effect in promoting the purposes for which an educational corporation was established. In

such cases the managing officers have the responsibility and duty of deciding. A decision plainly unreasonable, which affects the rights of third parties, might be disregarded by the court in cases of this kind, but a decision within the limits of reasonable determination should be given effect." In *Elder* v. *Atlanta University,* 194 Ga 716, 22 SE2d 515, 143 ALR 268, under a statute that exempted "all buildings erected by and used as a college. . . .", and providing that such property "is not used for purposes of private or corporate profit or income", dwellings erected near the main campus for professors were held exempt from taxation, where it was shown that it was a part of the duty of the professors occupying the dwellings to exercise supervision and control of the deportment of the students of the college; that this duty was facilitated by placing them near the student dormitories; that there were no facilities for housing the married members of the faculty in the dormitories, and that proper housing facilities were not available nearer the campus; and that the residences of the faculty members are often used by the students for conferences with the faculty members. In its opinion the court states: "In our opinion, these houses are buildings erected for and used as a college. It may be that a college could operate without a central heating plant, or without dormitories, or without a chapel building, but this would not prove that a central heating plant, or dormitories, or a chapel building, erected for and used by the authorities as a part of the equipment of the institution was not a part of the college and therefore subject to taxation. So with these dwelling houses. Some discretion must be given to the governing authorities of the institution to determine what buildings are necessary or proper to further their educational objectives. The fact is, that the dwellings were erected by the college authorities for college purposes, which our law says shall be exempt from taxation." To substantially the same effect are *Ramsey County* v. *Macalester College,* 51 Minn 437, 53 NW 704, 18 LRA 278, and *Northampton County* v. *Lafayette College,* 128 Pa 132, 18 A 516.

A college is a building or group of buildings in which students are housed, fed, instructed and governed. *Yale University* v. *New Haven,* 71 Conn 316, 42 A 87, 43 LRA 490. Looked at with reference to its educational work, a college consists of its trustees, teachers and students. *Northampton County* v. *Lafayette College, supra.* As stated in *Application of Thomas G. Clarkson College,* 77 NYS 2d 182, "A college with students but no faculty is much

more of an anomaly than one with a faculty but no students. In our conception of the term a faculty and a student body, for all practical considerations, are necessarily co-existent if there is to be a college. . . . In all fairness we may take notice of the fact that colleges will find it difficult to obtain teachers unless they can provide or find living quarters for them."

Dormitories and dining halls furnished by colleges for the use of their students are regarded as devoted to college purposes, and the fact that certain sums are paid for. the use of the rooms therein does not affect their exemption. *Yale University* v. *New Haven, supra; Harvard College* v. *Cambridge, supra; People* v. *University of Illinois Foundation,* 388 Ill 363, 58 NE 2d 33, 157 ALR 851; *Hoboken* v. *Div. of Tax Appeals, supra.*

It is difficult to see any distinction between a dormitory for students and a dormitory for teachers, as in this case, but we need not base our decision upon this ground. The debiting against teachers' salaries of sums for room rent or room and board is not unlike that in *Harvard College* v. *Cambridge, supra.* How the rent for rooms is received, whether their salaries include quarters, or the cost is deducted, or the teacher is required to pay such cost direct, makes no difference. Considering all the circumstances, the location of the Humphrey House, its many uses by the students, the shortage of homes for rent or sale in the locality, and the other facts shown, we have no doubt that the officers of the plaintiff corporation, in good faith and not unreasonably, are using this building in a way which they deem directly connected with the running of the institution as a college and promotive of its purposes. This being so, we must accept their judgment, and hold that the building is not rented for general commercial purposes, and that it would be exempt from taxation under P. L. 590.

It is now necessary to ascertain the effect, if any, that Section 1 of No. 12 of the Acts of 1941, above quoted, and enacted before the purchase of the Humphrey House, has upon Section 6 of plaintiff's charter. In construing this act certain well established rules should be noted. It is the fundamental rule of statutory construction that the intention of the Legislature must be ascertained and given effect. *Billings* v. *Billings,* 114 Vt 70, 72, 39 A2d 748; *In re Walker Estate,* 112 Vt 148, 151, 22 A2d 183; *Town of Brandon* v. *Harvey,* 105 Vt 435, 439, 168 A 708. It is always presumed in regard to a statute that no unjust or unreasonable result was intended by the Legislature. *Billings* v. *Billings,*

114 Vt 512, 514, 49 A2d 179, 169 ALR 855; *State* v. *Reynolds,* 109 Vt 308, 310, 1 A2d 730. Even if exemption had been granted to some colleges by general statutes, it would be unreasonable to impute to the Legislature the intent to repeal these, and not to repeal those which had been granted by special acts, unless such intention was very clearly expressed. *City of Hartford* v. *Hartford Theological Seminary, supra.* Where the statute is equivocally worded, so that the meaning is obscure, resort may be had to extrinsic matters, such as the history of the enactment and the trend of previous legislation. *Billings* v. *Billings,* 114 A 70, 72, 39 A2d 748; *In re Walker Estate, supra; Town of Randolph* v. *Montgomery,* 109 Vt 130, 137, 194 A 481; *Town of Brandon* v. *Harvey, supra.*

The act reads: "Any real estate acquired after passage of this bill by any college . . . such as would be exempt from taxation under the provisions of section 590 of the Public Laws . . .". "Any" college as here used means "every" college. Webster's New International Dictionary. Since the Humphrey House would be exempt from taxation under P. L. 590, the language used comprehends the plaintiff college. It appeared in argument that there is another college in the State, besides the plaintiff, which claims exemption by special act. It would be unjust and unreasonable to limit the exemption of other colleges claiming under the general law and not treat colleges exempt by special acts likewise. No such intention is expressed.

For a long time, owing to the increasing cost of town and city government and the need for increased local revenue, there has been a growing complaint about the removal from taxation of real estate held for tax exempt purposes. This has resulted in legislation. Beginning in 1904 we note the commencement of a legislative policy of curtailing the exemption from local taxation of lands sequestered or used for public, pious or charitable uses, and of lands owned by colleges, academies or other public schools. By No. 25 of the Acts of 1904, amending V. S. 364, it was provided that such exemption should not be construed as exempting any other lands or buildings owned or occupied by any religious society, other than a church edifice, parsonage, convent or school, the outbuildings thereof and the grounds adjacent to such church edifice, parsonage, convent or school kept and used as a lawn, play ground or garden. But this act provided that the lands or buildings exclusively used for the support of orphanages, homes, asylums or hospitals, which

receive and care for, without pay, indigent, old or infirm patients or inmates, should be exempt from taxation. By No. 32 of the Acts of 1910, amending P. S. 498, formerly V. S. 364, it was further provided that such exemption should not be construed as exempting municipal electric light plants when located outside the town wherein the municipality owning the same is situated. By No. 33 of the Acts of 1910, the exemption was removed, as we have noted, from lands of colleges, academies and public schools when rented for general commercial purposes. By No. 39 of the Acts of 1917, further amending P. S. 498, it was provided that real and personal property held by the State and located in any other town than that in which the institution of which it forms a part, should not be construed as exempt from taxation. By No. 40 of the Acts of 1917, further amending P. S. 498, it was provided in effect that the lands or buildings owned or kept by a religious society as a building used as an orphanage, home or hospital, and lands adjacent thereto kept and used as a lawn, play ground or garden should be within the exemption. By No. 10 of the Acts of 1933, amending G. L. 687, formerly P. S. 498, it was further provided that any lands or buildings owned or kept by any orphanage, home or hospital and not used directly for the purposes of such institution, but leased to others for income or profit, whether or not such institutions are conducted by or connected with a religious society, should not be construed as exempted from taxation, unless the town or municipality in which such lands or buildings are located so votes at any regular or special meeting duly warned therefor. By No. 21 of the Acts of 1935, amending P. L. 592, formerly G. L. 687, it was further provided that the tangible personal property of the last named institutions, which was leased to others for income or profit, should not be construed as exempt unless the town or municipality in which it is located so votes. V. S. 364, P. S. 498, G. L. 687 and P. L. 592, as amended, have become V. S. 652, rev. of 1947. Finally we come to No. 12 of the Acts of 1941, heretofore referred to, the last completed step in this policy of curtailing exemptions.

From an examination of the language of the act of 1941, construed according to the foregoing rules, in view of the legislative trend and other matters mentioned, we hold that there is a manifest legislative intention to include all colleges, (including those having a charter exemption where the right to alter, amend or repeal the same is reserved), within the terms of the act, and that the act shall be of universal application notwithstanding any special charter pro-

vision. Since the act and Section 6 of the plaintiff's charter are so far repugnant that they cannot stand together, the act repeals that section of the charter in so far as the repugnancy exists. The result is that the Humphrey House is taxable under the terms of the act.

Since an injunction bond has been filed in this case we do not make final entry here.

*Decree reversed, and cause remanded with directions that the bill be dismissed with costs to the defendants.*