GOSPEL VOLUNTEERS, INC., Respondent, v. VILLAGE OF SPECULATOR, Appellant.

Third Department, March 25, 1970.

408

*Robinson, Lewis & Bell* (*John L. Bell* of counsel), for appellant.

*Lyman P. Williams* (*Lockwood & Lockwood* of counsel), for respondent.

GREENBLOTT, J. These are appeals from (1) an order of the Supreme Court at Special Term, entered January 13, 1969 in Fulton County and February 6, 1969 in Hamilton County, which granted plaintiff's motion for summary judgment, (2) the judgments entered thereon, and (3) an order of the Supreme Court at Special Term, entered March 4, 1969 in Hamilton County, which denied defendant's motion for rehearing, renewal and reargument.

Plaintiff corporation operates two camps in defendant village. For several years this property has been carried on defendant's assessment rolls and the taxes thereon have been paid under protest. This action was brought to have the assessments and taxes declared null and void, to direct defendant to refund the taxes paid, and to determine that plaintiff is a tax-exempt organization. The judgment granted the relief requested in all respects.

Respondent's main camp, Camp-of-the-Woods, was established in 1914. Its certificate of incorporation sets forth the following purposes: " Establish and maintain a non-profit, non-sectarian, evangelical organization for the promotion of the Christian religion; to encourage Christian teachings and practices through

daily personal Bible study; to disseminate non-sectarian Christian literature through pamphlets * * * and other media consonant with the non-profit purposes of the organization; to conduct all manner of religious evangelical meetings and services; to foster and develop true Christian fellowship among all men; to develop the character and usefulness of its members, cultivate and improve their spiritual, moral, social and physical health through acquisition, maintenance, operation and control of exclusively non-sectarian religious and educational * * * camps; to purchase, lease * * * sell or otherwise acquire or convey real or personal property of whatsoever nature, for the purpose of creating such religious * * * camps; to establish trust funds, scholarships and annuities * * * for the purpose of furthering the aims of the organization and of the Christian religion * * * to assist financially or otherwise * * * the formation, organization, promotion and operation of any similar non-sectarian, non-profit organization, or any other religious organization devoted to similar purposes and with similar ideals; to advance its membership in Christian charity and the Christian mode of living.''

Camp-of-the-Woods can accommodate 575 persons, and has a staff of about 160. Accommodations vary from cabins, trailer sites, and '' tentals '' to a large lodge house, with varying prices. Facilities include a dining room, chapel, auditorium, crafts center, a '' Trading Post '' or small store at which crafts, clothing and novelties are sold to campers, a snack bar, housing facilities for the staff, docks, picnic areas, a large sand beach, basketball, tennis and shuffleboard courts, miniature golf course and water-skiing. Most of these activities are paid for by the guests. The program includes religious services each weekday morning, several weekday evenings, and two large services on Sunday, all held in the auditorium, which seats nearly 1,000. Smaller daily prayer services and seminars are held in the chapel. Religious music is another feature, with a staff band and choir performing at all services and giving two major concerts a week. The general public may attend free, provided they make a $2 contribution to the respondent. Numerous religiously oriented films are also shown each week. Evangelists, preachers, bible teachers and missionaries regularly visit the camp. The Fellowship of Christian Athletes, which includes many nationally known sports figures, give regular sports clinics, without charge, which endeavor to promote the Christian way of life through athletics.

Respondent also owns Camp Tapawingo, located on an island in Lake Pleasant. It is exclusively for girls between 8 and 16

years of age. Other than being somewhat more rustic and not being limited to girls of the Christian faith, Camp Tapawingo is substantially the same as Camp-of-the-Woods.

Membership in the respondent corporation costs $2 and area residents can become associate members for a fee of $10. Visitors are permitted at Camp-of-the-Woods but are not allowed to purchase items. Over the last 15 years, respondent's gross income has ranged between $200,000 and $300,000. In 1965, for example, the net income before depreciation, was $92,703.93. Respondent's total net worth as of 1968 was $1,170,772.78.

In order to be entitled to exemption from taxation under section 420 of the Real Property Tax Law, respondent must pass a three-step test. 1. It must be organized exclusively for the purposes in section 420 of the Real Property Tax Law. 2. Its property must be used primarily in furtherance of these purposes. 3. No pecuniary profit from the plaintiff's operation may inure to the benefit of any of its officers, members or employees, nor may it simply be used as a guise for profit-making operations.

On the issue of exclusive organization, our decision in *Christian Camps* v. *Village of Speculator* (275 App. Div. 868, mot. for lv. to app. den. 301 N. Y. 813) is dispositive. The plaintiff's certificate of incorporation in that case stated that its purposes were to maintain camps and assemblies for physical, moral and spiritual advancement. We held these purposes to be within the statute. In this case, respondent's purposes are to " cultivate and improve their spiritual, moral, social and physical health ". Among the purposes exempt under section 420 are " the moral or mental improvement of men and women, or for religious, bible, tract, charitable, benevolent, missionary * * * educational * * * or for two or more such purposes ".

The only difference between this case and the *Christian* case (*supra*) is that respondent's purposes include social improvement. While the statute does not specifically mention this purpose, it is established that a corporation organized for purposes, *inter alia*, not so mentioned may still receive tax-exempt treatment provided that such purposes are incidental to its principal purposes which are within the statute and serve only as " an embellishment or adjunct " to its primary purposes (*People ex rel. Untermyer* v. *McGregor*, 295 N. Y. 237, 244). Moreover, considering the general character of present-day organizations devoted to the promotion of religious purposes, it is virtually impossible to draw fine distinctions between the spiritual, moral, social, mental and physical improvement of an individual. Thus, all of respondent's purposes appear necessarily incidental to

its primary purpose of promoting the Christian religion, and upon a reasonable interpretation of the statute, are within the intendment thereof (see *People ex rel. Watchtower Bible & Tract Soc. v. Haring,* 8 N Y 2d 350).

While respondent is not a part of a recognized sect or denominational church and therefore incorporated under the Membership Corporations Law instead of the Religious Corporations Law, it is still eligible for exemption. (*People ex rel. Outer Court v. Miller,* 161 Misc. 603, affd. 256 App. Div. 814, affd. 280 N. Y. 825.)

The determination of whether the property is used exclusively for the statutory purposes depends upon whether its primary use is in furtherance of the permitted purposes (*Greater New York Corp. of Seventh-Day Adventists v. Town of Dover,* 29 A D 2d 861, app. dsmd. 23 N Y 2d 682). Thus, incidental use of the property for a nonexempt purpose will not destroy the exemption (*Matter of St. Luke's Hosp. v. Boyland,* 12 N Y 2d 135, 143). For example, in *Greater New York Corp. of Seventh-Day Adventists* (*supra*), the property consisted of a cafeteria, cabins, farmhouses, tennis courts, lake frontage, a golf course and a swimming pool, all of which were held exempt. It is generally recognized that recreational activity is reasonably incident to a camp devoted to religious purposes (*Matter of Silver Bay Assn. for Christian Conferences & Training v. Braisted,* 80 N. Y. S. 2d 548, affd. 196 App. Div. 913).

Lastly, as to the question of the effect of a profit upon a tax exemption, the Court of Appeals has said: "Exemption from the general property tax is not conditioned upon whether an enterprise is profitable. It depends upon whether one would reasonably expect that if a profit were made it would inure to the benefit * * * of any 'officer, member or employee' of the educational corporation." (*Matter of Semple School for Girls v. Boyland,* 308 N. Y. 382, 387.) The fact that an organization makes a profit from its operations does not make it a commercial enterprise so long as all profits are devoted to the permitted corporate purposes (*People ex rel. Watchtower v. Haring,* 8 N Y 2d 350, *supra*). Similarly, rental income which is used for carrying out the corporation's charitable purposes is not such profit as will disqualify it from an exemption (*American-Russian Aid Assn. v. City of Glen Cove,* 41 Misc 2d 622, affd. 23 A D 2d 966).

Respondent derives income from membership fees, fees for lodging, services and goods at its camps. After paying its operating expenses, any remaining excess income is given to missionaries and other charitable organizations. The receipt

of payment from its members for housing and recreational activities is no bar to an exemption (*People ex rel. Buffalo Turn Verein* v. *Assessors of City of Buffalo,* 257 App. Div. 902). Plaintiff is also not subject to taxation simply because of the large volume of its income or because it has assets in excess of its liabilities (*People ex rel. Doctors Hosp.* v. *Sexton,* 267 App. Div. 736, 743, affd. 295 N. Y. 553; *People ex rel. Watchtower Bible & Tract Soc.* v. *Mastin,* 191 Misc. 899).

The property should be totally exempt from taxation under section 420 of the Real Property Tax Law.

The judgments and orders should be affirmed, without costs.

REYNOLDS, J. P., STALEY, JR., COOKE and SWEENEY, JJ., concur.

Judgments and orders affirmed, without costs.