2013 VT 99

## Brownington Center Church of Brownington, Vermont, Inc. n/k/a New Hope Bible Church and Ministries, Inc. v. Town of Irasburg

[87 A.3d 502]

No. 12-224

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed October 25, 2013

*Duncan Frey Kilmartin* of *Rexford & Kilmartin*, Newport, for Plaintiff-Appellant.

*William R. May* of *May & Davies*, Barton, for Defendant-Appellee.

¶ 1. **Skoglund, J.** Taxpayer, Brownington Center Church of Brownington, Vermont, now known as New Hope Bible Church and Ministries, Inc. (the Church), appeals the Superior Court, Civil Division's determination that certain land and buildings owned by the Church are not exempt from real estate taxes for the tax year commencing April 1, 2009 under 32 V.S.A. § 3832(2). We affirm.

¶ 2. In 1997, a Vermont farmer established a Christian summer camp known as River of Life in the Town of Irasburg with the intent that the camp would serve as an outreach for youth

ministry. Shortly thereafter, the farmer, along with others, formed River of Life, Inc., a nonprofit organization. In 1998, River of Life, Inc., constructed four cabins with housing capacity for eighty campers, an equipment building, and a kitchen on the property. By 2000, the camp was functional and hosted its first group of campers. Since then, the camp has operated each summer with attendance ranging from fifty to seventy campers per session. The camp operates eight weeks out of the year, one of which is used for counselor training. When camp is not in session, the property is used primarily for storage purposes, though occasional Sunday services were held in the equipment building during off-season in the 2009 taxable year.

¶ 3. A typical day at the camp includes a one-hour Bible session, which is held in the equipment building. Thereafter, campers participate in classic summer camp activities, such as swimming, canoeing, archery, paintball, boating, horseback riding, and other games. Daily quiet or devotional time is also scheduled, and each day concludes with evening prayer in the equipment building.

¶ 4. From 2004 to 2007, the Town of Irasburg listed the River of Life property as exempt from property taxes. Then, in 2008, the town reviewed the status of exempt properties and distributed questionnaires to determine whether property owners met the criteria for property tax exemption. The vice president of River of Life, Inc., completed the questionnaire for the camp. He iterated that the purpose of the camp "is to share the Gospel of Jesus Christ . . . through various ministries consistent with the Holy Scriptures. The ministries include camping, conferencing, RV park and [a] corn maze." The vice president listed all buildings on the parcel as including "four 22' x 40' single story cabins, one 30' x 40' equipment [building], one portable kitchen on wheels." In March 2009, River of Life, Inc., conveyed all of its assets and operations to the Brownington Church. The Church has continued to operate the summer camp under the name River of Life.

¶ 5. In July 2009, the town listers conducted an appraisal and site visit of the property. Because no existing structure resembled a qualifying structure under Vermont tax law, the listers concluded the property was not tax exempt and assessed the property value to be $362,000. The Church's attorney sent the town listers a conditional grievance letter, informing them of the Church's recent purchase of the camp and its belief that the River of Life camp qualifies for tax exemption. The listers denied the grievance, and the Church appealed to the Irasburg Board of Civil Authority.

¶ 6. The Board held a meeting and conducted an inspection of the property in August 2009 to determine the property's tax exemption status and the fair market value. It agreed that the property did not qualify for exemption, ruled that the property should be listed as a taxable property in the grand list, and found no discrepancy in the listers' property valuation.

¶ 7. The Church then appealed the Board's property tax assessment to Orleans Superior Court and argued that the entire property was tax exempt because the buildings on the camp were either a church edifice, or a building used as a convent, school or home as defined in 32 V.S.A. §§ 3802(4) and 3832(2). The trial court found that no structure of the sort existed on the property for the purposes of tax exemption and that "the land surrounding these buildings is the exact opposite of an 'edifice.'" This appeal followed.

¶ 8. Section 3802(4) of Title 32 provides that real estate granted, sequestered, or used for public, pious, or charitable uses shall be exempt from taxation. In the case at hand, the trial court did not fully address whether the Church would qualify as tax exempt under § 3802(4) but resolved the dispute on the narrower grounds of § 3832(2). Because the parties do not challenge such findings, we limit our discussion to the confines of § 3832(2).

¶ 9. ■■ ■■ Our primary goal, when interpreting a statute, is to give effect to the Legislature's intent. *Tarrant v. Dep't of Taxes*, 169 Vt. 189, 197, 733 A.2d 733, 739 (1999). If the legislative intent is clear from the plain language of the statute, we enforce the statute according to its terms. *Id.* If the statute is ambiguous, however, "legislative intent must be determined through consideration of the entire statute, including its subject matter, [and its] effects and consequences." *Id.* When construing tax exemptions, we are reminded that exemptions are the exception to the rule and not favored. The burden is on the person claiming the benefit of the exemption, and the exemption statute must be strictly construed against that person. *Our Lady of Ephesus House of Prayer, Inc. v. Town of Jamaica*, 2005 VT 16, ¶ 14, 178 Vt. 35, 869 A.2d 145.

¶ 10. ■■ Section 3832(2) narrows the pious-use exemption of § 3802(4) by eliminating exemptions for:

> Real estate owned or kept by a religious society other than a church edifice, a parsonage, the outbuildings of

> the church edifice or parsonage, a building used as a convent, school, orphanage, home, or hospital, land adjacent to any of the buildings named in this subsection, . . . playground, or garden, and the so-called glebe lands.

§ 3832(2); see also *In re Abbey Church of St. Andrew*, 145 Vt. 227, 229, 485 A.2d 1263, 1265 (1984) (concluding that § 3832 narrows the scope of § 3802 rather than creating an exemption independent of § 3802); *Governor Clinton Council, Inc. v. Koslowski*, 137 Vt. 240, 244-45, 403 A.2d 689, 692-93 (1979) (noting the Legislature's prerogative to condition general exemption from taxation of real and personal property used for public, pious or charitable uses).

¶ 11. The parties do not dispute that the River of Life property is dedicated for pious use and that it is owned and operated by the Church as a nonprofit organization. The issue, then, is whether the property is excluded from the pious-use exemption of § 3802(4) by the language in § 3832(2). The Church argues that the camp property qualifies for exemption, primarily because everything that occurs on the property facilitates its religious ministry and that "worship and service of the Believer in Christ" takes place everywhere on the premises. "The entire property [is] dedicated and used for the religious mission [of the Church]," such that the use of the structures and the property is "exclusively religious." Under this belief, the Church maintains that the steel equipment building, the cabins, kitchen and the tent, are all church edifices. It defines "church edifice" to be a "structure or facility that is used exclusively or primarily to propagate a religious message to persons who receive that message for a worshipful purpose." It posits that an overnight summer camp for religious purposes transforms the entire property into a place of worship and education. We disagree.

¶ 12. ■ The Church's view of the camp property is at odds with the secular statute that governs the assessment of property taxes. This Court has held that § 3832(2) narrows the broad exemptions allotted under § 3802(4). See *In re Abbey Church*, 145 Vt. at 229, 485 A.2d at 1265. In fact, § 3832(2) was drafted to eliminate property tax exemptions for certain real estate in order to respond to a growing number of complaints concerning the need for increased local revenue. See *Our Lady of Ephesus*, 2005 VT 16, ¶ 16; *Troy Conference Acad. v. Town of Poultney*, 115 Vt. 480, 490, 66 A.2d 2, 9 (1949) (discussing the legislative history of

§ 3832 and how in 1904 the Legislature began curtailing exemptions for lands used for public, pious, or charitable purposes); see also 1904, No. 25, § 1 (amending V.S. § 364). We construe the terms of § 3832(2) with this purpose in mind.

¶ 13. ■ ■ The Vermont Legislature has not provided a definition of "church edifice" in the tax laws or elsewhere, and this Court has not had the opportunity to define church edifice in such a context. We need not try to define "church edifice" with more precision because the statute makes it clear that a church camp is not, in any event, among the types of property included within the pious-use exemption. The Legislature has itemized a host of specific types of properties used for pious purposes that fall within the exemption. 32 V.S.A. § 3832(2). If the Legislature had intended that the pious-use exemption be available to any property, building or storefront used to propagate a religious message or for a worshipful purpose, as suggested by the Church, it would have said so, and would not have enacted a specific and limited list of property subject to the exemption. See, e.g., *Daniels v. Elks Club of Hartford*, 2012 VT 55, ¶ 33, 192 Vt. 114, 58 A.3d 925 ("Had the Legislature intended otherwise, it could easily have conveyed that."); *In re D'Antonio*, 2007 VT 100, ¶ 7, 182 Vt. 599, 939 A.2d 493 (mem.) ("Where the intent of the Legislature is ambiguous or unclear from the language . . . we consider the entirety of the statute, its effects and consequences, and the reason and spirit of the law to determine its true meaning.") (quotation omitted)).

¶ 14. ■ The types and intended uses of properties that are eligible for the pious-use exemption under § 3832(2) are identified with specificity and include convents, schools, orphanages, and hospitals. *Id.* § 3832(2). The list does not include church camps per se — meaning church camps are not exempt.

¶ 15. ■ The Church tries to avoid the significance of the exclusion of church camps from the list of exempt properties by arguing that this church camp consists of .a "church edifice" or collection of "church edifices." In construing the statute, we presume that "the Legislature intended the plain, ordinary meaning of [the] statute." *Benson v. MVP Health Plan, Inc.*, 2009 VT 57, ¶ 4, 186 Vt. 97, 978 A.2d 33 (quotation omitted). A church camp is not ordinarily described as a "church edifice." The occasional use of the storage building for church services during the off season in the 2009 tax year does not undermine our conclusion, as

our focus is on the undisputed primary use of the property. See *Our Lady of Ephesus*, 2005 VT 16, ¶ 23 ("It is not the number of worshippers or the frequency of worship, but the primary use that defines a place of worship." (quotation omitted)). The Church argues that Biblical illiteracy in a secularized society and a secular court is at the root of the trial court's error. The Church believes that "the human body is a Temple, where God resides through the Holy Spirit" and that the Church is the body of believers in Christ and not a physical structure. However, the core beliefs of any pious religious society cannot shape the logical interpretation of the taxation statute.

¶ 16. ■ With this, we emphasize the limited scope of our holding. We do not decide as a matter of law what structures can or cannot be a house of worship — be it a cabin, a tent, or a Quonset hut. See, e.g., *William T. Stead Mem'l Ctr. of N.Y. v. Town of Wareham*, 12 N.E.2d 725, 727 (Mass. 1938) (noting that "[t]he house is not at all in the usual form of churches or chapels, interiorly or exteriorly, but that fact is not determinative of this case"). Rather, our decision today rests solely on the fact that church camps are not among the real estate owned by a religious society that the Legislature has made expressly eligible for the pious-use exemption, and, in our view, describing a church camp as a "church edifice" stretches the statutory term far beyond its ordinary meaning. Accordingly, we hold that neither the storage building nor the cabins that house campers nor the kitchen where meals are prepared nor the surrounding lands fit within the exemptions listed in § 3832(2), based on either the type of or primary use of these structures. When all is said and done, this property is a camp — a summer camp owned by a church. It is neither a listed structure nor does it encompass a listed use enumerated in § 3832(2), and therefore it is not entitled to property tax exemption.

¶ 17. The Church asserts that the trial court improperly relied on New York precedent in reaching its conclusion that the camp is not a school for exemption purposes. We disagree. The trial court found a New York court's indicia for educational organizations persuasive. See *Highland Lake Bible Conference, Inc. v. Bd. of Assessors*, 460 N.Y.S.2d 170, 172 (App. Div. 1983) (looking at whether the organization in question was "affiliated with any recognized educational institution," "charted by the Board of Regents," "classified by the State Department of Education,"

offered degrees and credits, and whether "activities form[ed] part of an organized instructional program"). The trial court did not wholly base its decision on the reasoning of the New York court; rather, it cited the case as a passing reference in order to bolster its own rationale. Because we find the trial court's assessment reasonable, we find no error.

¶ 18. The Church also alleges that the trial court improperly disregarded precedent set by this Court when it overlooked the conclusions made in *Our Lady of Ephesus*, 2005 VT 16. In that case, petitioner, Our Lady of Ephesus House of Prayer (OLEHOP), a nonprofit organization, argued that all of its property was exempt from taxation under § 3802(4) as either a pious or public use. *Id.* ¶¶ 1, 3. OLEHOP challenged the applicability of § 3832 to its organization as it did not define itself as a religious society. The Court concluded that OLEHOP was indeed a religious society, notwithstanding its unconventional form, and subject to the limitations of § 3832. *Id.* ¶ 29. The Court did not directly address whether discerning the use of a religious organization for tax purposes by employing a "quantum-of-use" test would lead to entanglement of church and state because it found the argument to be premature and that petitioners failed to preserve the claim. *Id.* ¶ 41. The Court did, however, note that the U.S. Supreme Court affirmed states' abilities to provide property tax exemptions to religious institutions and that a court's decision as to whether a religious institution fit within a statutorily prescribed definition would not necessarily be considered entanglement. *Id.* ¶ 40. To the extent that the Church argues that the trial court failed to use the precedent established in *Our Lady of Ephesus*, it is wrong. There is no dispute in the present case that the Church is a religious society subject to the restrictions of § 3832(2). The question presented here is whether a camp operated by a church qualifies as tax-exempt under the statute. Because *Our Lady of Ephesus* answers a different question, the doctrine of stare decisis is not disturbed by the trial court's decision. See *Daniels*, 2012 VT 55, ¶ 48 ("We are bound by stare decisis to follow our precedents.").

¶ 19. ▮ Finally, the Church urges this Court to consider other jurisdictions' interpretation of church camp exemptions. Specifically, the Church cites two cases: one from New York, *Gospel Volunteers, Inc. v. Vill. of Speculator*, 308 N.Y.S.2d 785 (App. Div. 1970), and one from Colorado, *Maurer v. Young Life*, 779 P.2d 1317 (Colo. 1989). While we often look to our sister courts for

guidance on matters of first impression, we are cautious to rely on the rulings derived from distinct statutory schemes. We find significant differences in the noted statutes.[*] Both of these frameworks offer a broader base of exemptions while Vermont law confines its exemptions to an exclusive list of defined structures. See 32 V.S.A. § 3832(2). Accordingly, because the constrictions of the Vermont law are narrower than New York and Colorado, as cited by the Church, we do not find the cases persuasive.

*Affirmed.*

---

[*] To qualify for an exemption under the New York statutory scheme petitioner "must be organized exclusively for the purposes in section 420 of the Real Property Tax Law. . . . Its property must be used primarily in furtherance of these purposes. . . . [and] [n]o pecuniary profit from the plaintiff's operation may inure to the benefit of any of its officers, members or employees, nor may it simply be used as a guise for profitmaking operations." *Gospel Volunteers*, 308 N.Y.S.2d at 788-89. Similarly, in Colorado: "Property, real and personal, that is used solely and exclusively for religious worship, for schools or for strictly charitable purposes . . . shall be exempt from taxation, unless otherwise provided by general law." *Maurer*, 779 P.2d at 1330 (quotation omitted).