2013 VT 99



Brownington
Center Church n/k/a New Hope Bible Church and Ministries (2012-224)

 

2013 VT 99

 

[Filed 25-Oct-2013]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision before
publication in the Vermont Reports.  Readers are requested to notify the
Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at:
Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any
errors in order that corrections may be made before this opinion goes to press.

 

 


 2013 VT 99
 
  


 No. 2012-224
 
  


 Brownington
 Center Church of Brownington, 
 Vermont, Inc. n/k/a New Hope Bible Church 
 and Ministries, Inc.
 
 
 Supreme Court
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Superior Court, Orleans Unit,
 
 
  
 
 
 Civil Division
 
 
 Town of Irasburg
 
 
  
 
 
  
 
 
 March Term, 2013
 
 
  
 
 
  
 
 
 Martin
 A. Maley, J.
 
 
  
 
 Duncan Frey Kilmartin
of Rexford & Kilmartin, Newport, for
Plaintiff-Appellant.

 

William R. May of May & Davies,
Barton, for Defendant-Appellee.

 

 

PRESENT:  Reiber, C.J., Dooley, Skoglund,
Burgess and Robinson, JJ.

 

 

¶ 1.            
SKOGLUND, J.   Taxpayer, Brownington
Center Church of Brownington, Vermont, now known as
New Hope Bible Church and Ministries, Inc. (the Church), appeals the Superior
Court, Civil Division’s determination that certain land and buildings owned by
the Church are not exempt from real estate taxes for the tax year commencing
April 1, 2009 under 32 V.S.A. § 3832(2).  We affirm. 

¶ 2.            
In 1997, a Vermont farmer established a Christian summer camp known as
River of Life in the Town of Irasburg with the intent
that the camp would serve as an outreach for youth ministry.  Shortly
thereafter, the farmer, along with others, formed River of Life, Inc., a nonprofit organization.  In 1998, River of Life,
Inc., constructed four cabins with housing capacity for eighty campers, an
equipment building, and a kitchen on the property.  By 2000, the
camp was functional and hosted its first group of campers.  Since then,
the camp has operated each summer with attendance ranging from fifty to seventy
campers per session.  The camp operates eight weeks out of the year, one
of which is used for counselor training.  When camp is not in session, the
property is used primarily for storage purposes, though occasional Sunday
services were held in the equipment building during off-season in the 2009
taxable year.  

¶
3.            
A typical day at the camp includes a one-hour Bible session, which is
held in the equipment building.  Thereafter, campers participate in
classic summer camp activities, such as swimming, canoeing, archery, paintball,
boating, horseback riding, and other games.  Daily quiet or devotional
time is also scheduled, and each day concludes with evening prayer in the
equipment building.  

¶
4.            
From 2004 to 2007, the Town of Irasburg listed
the River of Life property as exempt from property taxes.  Then, in 2008,
the town reviewed the status of exempt properties and distributed
questionnaires to determine whether property owners met the criteria for
property tax exemption.  The vice president of River of Life, Inc.,
completed the questionnaire for the camp.  He iterated that the purpose of
the camp “is to share the Gospel of Jesus Christ . . . through
various ministries consistent with the Holy Scriptures.  The ministries
include camping, conferencing, RV park and [a] corn
maze.”  The vice president listed all buildings on the parcel as including
“four 22’ x 40’ single story cabins, one 30’ x 40’ equipment [building], one portable kitchen on wheels.”  In March 2009, River
of Life, Inc., conveyed all of its assets and
operations to the Brownington Church.  The
Church has continued to operate the summer camp under the name River of Life.  

¶
5.            
In July 2009, the town listers conducted an
appraisal and site visit of the property. Because no existing structure
resembled a qualifying structure under Vermont tax law, the listers
concluded the property was not tax exempt and assessed the property value to be
$362,000.  The Church’s attorney sent the town listers
a conditional grievance letter, informing them of the Church’s recent purchase
of the camp and its belief that the River of Life camp qualifies for tax
exemption.  The listers denied the grievance,
and the Church appealed to the Irasburg Board of
Civil Authority.  

¶
6.            
The Board held a meeting and conducted an inspection of the property in
August 2009 to determine the property’s tax exemption status and the fair
market value.  It agreed that the property did not qualify for exemption,
ruled that the property should be listed as a taxable property in the grand
list, and found no discrepancy in the listers’
property valuation.  

¶
7.            
The Church then appealed the Board’s property tax assessment to Orleans
Superior Court and argued that the entire property was tax exempt because the
buildings on the camp were either a church edifice, or a building used as a
convent, school or home as defined in 32 V.S.A. §§ 3802(4) and 3832(2).
 The trial court found that no structure of the sort existed on the
property for the purposes of tax exemption and that “the land surrounding these
buildings is the exact opposite of an ‘edifice.’ ”  This
appeal followed. 

¶
8.            
Section 3802(4) of Title 32 provides that real estate granted, sequestered, or used for public, pious, or charitable uses
shall be exempt from taxation.  In the case at hand, the trial court did
not fully address whether the Church would qualify as tax exempt under
§ 3802(4) but resolved the dispute on the narrower grounds of
§ 3832(2).  Because the parties do not challenge such findings, we
limit our discussion to the confines of § 3832(2). 

¶
9.            
Our primary goal, when interpreting a statute, is to give effect to the
Legislature’s intent.  Tarrant v. Dep’t of Taxes,
169 Vt. 189, 197, 733 A.2d 733, 739 (1999).  If the legislative
intent is clear from the plain language of the statute, we enforce the statute
according to its terms.  Id.  If the statute is ambiguous,
however, “legislative intent must be determined through consideration of the
entire statute, including its subject matter, [and its] effects and consequences.” 
Id.  When construing tax exemptions, we are reminded that
exemptions are the exception to the rule and not favored.  The burden is
on the person claiming the benefit of the exemption, and the exemption statute
must be strictly construed against that person.  Our Lady of Ephesus
House of Prayer, Inc. v. Town of Jamaica, 2005 VT 16, ¶ 14, 178 Vt.
35, 869 A.2d 145.

¶
10.        
Section 3832(2) narrows the pious-use exemption of § 3802(4) by
eliminating exemptions for: 

[r]eal
estate owned or kept by a religious society other than a church edifice, a
parsonage, the outbuildings of the church edifice or parsonage, a building used
as a convent, school, orphanage, home or hospital, land adjacent to any of the
buildings named in this subsection, . . . playground or garden and the so-called glebe lands.

§ 3832(2);
See also In re Abbey Church of St. Andrew, 145 Vt. 227, 229, 485 A.2d
1263, 1265 (1984) (concluding that § 3832 narrows the scope of § 3802
rather than creating an exemption independent of § 3802); Governor
Clinton Council, Inc., v. Koslowski, 137 Vt. 240,
244-45, 403 A.2d 689, 692-93 (1979) (noting the Legislature’s prerogative to
condition general exemption from taxation of real and personal property used
for public, pious or charitable uses).

¶
11.        
The parties do not dispute that the River of Life property is dedicated
for pious use and that it is owned and operated by the Church as a nonprofit
organization.  The issue, then, is whether the property is excluded from
the pious-use exemption of § 3802(4) by the language in
§ 3832(2).  The Church argues that the camp property qualifies for
exemption, primarily because everything that occurs on the property facilitates
its religious ministry and that “worship and service of the Believer in Christ”
takes place everywhere on the premises.  “The entire property [is]
dedicated and used for the religious mission [of the Church],” such that the
use of the structures and the property is “exclusively religious.”  Under
this belief, the Church maintains that the steel equipment building, the
cabins, kitchen and the tent, are all church edifices.  It defines “church
edifice” to be a “structure or facility that is used exclusively or primarily
to propagate a religious message to persons who receive that message for a
worshipful purpose.”  It posits that an overnight summer camp for
religious purposes transforms the entire property into a place of worship and
education.  We disagree.

¶
12.        
The Church’s view of the camp property is at odds with the secular
statute that governs the assessment of property taxes.  This Court has held that
§ 3832(2) narrows the broad exemptions allotted under
§ 3802(4).  See In re Abbey Church, 145 Vt. at 229, 485 A.2d at 1265.  In fact, § 3832(2) was drafted
to eliminate property tax exemptions for certain real estate in order to
respond to a growing number of complaints concerning the need for increased
local revenue.  See Our Lady of Ephesus, 2005 VT 16, ¶ 16; Troy
Conference Acad. v. Town of Poultney, 115 Vt. 480, 490, 66 A.2d 2, 9 (1949)
(discussing the legislative history of § 3832 and how in 1904 the
Legislature began curtailing exemptions for lands used for public, pious, or
charitable purposes); see also 1904, No. 25 § 1 (amending 1 V.S.
§ 364).  We construe the terms of § 3832(2) with this purpose in
mind.  

¶
13.        
The Vermont Legislature has not provided a definition of “church
edifice” in the tax laws or elsewhere, and this Court has not had the
opportunity to define church edifice in such a context.  We need not try
to define “church edifice” with more precision because the statute makes it
clear that a church camp is not, in any event, among the types of property
included within the pious-use exemption.  The Legislature has itemized a
host of specific types of properties used for pious purposes that fall within
the exemption.  32 V.S.A. § 3832(2). 
If the Legislature had intended that the pious-use exemption be available to
any property, building or storefront used to propagate a religious message or
for a worshipful purpose, as suggested by the Church, it would have said so,
and would not have enacted a specific and limited list of property subject to
the exemption.  See, e.g., Daniels v. Elks Club of Hartford, 2012
VT 55, ¶ 33, 192 Vt. 114, 58 A.3d 925 (“Had the Legislature
intended otherwise, it could easily have conveyed
that.”); In re D’Antonio, 2007 VT 100,
¶ 7, 182 Vt. 599, 939 A.2d 493 (“Where the intent of the Legislature is
ambiguous or unclear from the language . . . we consider
the entirety of the statute, its effects and consequences, and the reason and
spirit of the law to determine its true meaning.”) (quotation
omitted)).  

¶
14.        
The types and intended uses of properties that are eligible for the
pious-use exemption under § 3832(2) are identified with specificity and
includes convents, schools, orphanages, and hospitals.  Id.
§ 3832(2).  The list does not include church camps per
se—meaning church camps are not exempt.  

¶
15.        
The Church tries to avoid the significance of the exclusion of church
camps from the list of exempt properties by arguing that this church camp
consists of a “church edifice” or collection of “church edifices.”  In
construing the statute, we presume that “the Legislature intended the plain,
ordinary meaning of [the] statute.”  Benson v. MVP Health Plan, Inc.,
2009 VT 57, ¶ 4, 186 Vt. 97, 978 A.2d 33 (quotation omitted).  A church camp is not
ordinarily described as a “church edifice.”  The occasional use of the
storage building for church services during the off season in the 2009 tax year
does not undermine our conclusion, as our focus is on the undisputed primary
use of the property.  See Our Lady of Ephesus, 2005 VT 16, ¶ 23 (“It is not the number of worshippers or the frequency of
worship, but the primary use that defines a place of worship.” (quotation omitted)).  The Church argues that Biblical
illiteracy in a secularized society and a secular court is at the root of the
trial court’s error.  The Church believes that “the human body is a
Temple, where God resides through the Holy Spirit” and that the Church is the
body of believers in Christ and not a physical structure.  However, the
core beliefs of any pious religious society cannot shape the logical
interpretation of the taxation statute.     

¶
16.        
With this, we emphasize the limited scope of our holding.  We do
not decide as a matter of law what structures can or cannot be a house of
worship—be it a cabin, a tent, or a Quonset hut.  See,
e.g., William T. Stead Mem. Ctr. of
N.Y. v. Town of Wareham, 12 N.E.2d 725, 727 (Mass. 1938) (noting that
“[t]he house is not at all in the usual form of churches or chapels, interiorly
or exteriorly, but that fact is not determinative of this case”).  Rather,
our decision today rests solely on the fact that church camps are not among the
real estate owned by a religious society that the Legislature has made
expressly eligible for the pious-use exemption, and, in our view, describing a
church camp as a “church edifice” stretches the statutory term far beyond its
ordinary meaning.  Accordingly, we hold that neither the storage building
nor the cabins that house campers nor the kitchen where meals are prepared nor
the surrounding lands fit within the exemptions listed in § 3832(2), based
on either the type of or primary use of these structures.  When all is
said and done, this property is a camp—a summer camp owned by a church. 
It is neither a listed structure nor does it encompass a listed use enumerated
in § 3832(2) and therefore it is not entitled to property tax exemption. 

¶
17.        
The Church asserts that the trial court improperly relied on New York
precedent in reaching its conclusion that the camp is not a school for
exemption purposes.  We disagree.  The trial court found a New York
court’s indicia for educational organizations persuasive.  See Highland
Lake Bible Conference, Inc. v. Bd. of Assessors, 460 N.Y.S.2d 170, 172 (NY
App. Div. 1983) (looking at whether the organization in question was
“affiliated with any recognized educational institution,” “charted by the Board
of Regents,” “classified by the State Department of Education,” offered degrees
and credits, and whether “activities form[ed] part of
an organized instructional program”).  The trial court did not wholly base
its decision on the reasoning of the New York court; rather, it cited the case
as a passing reference in order to bolster its own rationale.  Because we
find the trial court’s assessment reasonable, we find no error. 

¶
18.        
The Church also alleges that the trial court improperly disregarded
precedent set by this Court when it overlooked the conclusions made in Our
Lady of Ephesus,  2005 VT 16.  In that case, petitioner, Our Lady
of Ephesus House of Prayer (OLEHOP), a nonprofit organization, argued that all
of its property was exempt from taxation under § 3802(4) as a either a
pious or public use.  Id. ¶¶ 1, 3. 
OLEHOP challenged the applicability of § 3832 to its organization as it
did not define itself as a religious society.  The Court concluded that
OLEHOP was indeed a religious society, notwithstanding its unconventional form,
and subject to the limitations of § 3832.  Id.
¶ 29.  The Court did not directly address whether discerning
the use of a religious organization for tax purposes by employing a
“quantum-of-use” test would lead to entanglement of Church and State because it
found the argument to be premature and that petitioners failed to preserve the
claim.  Id. ¶ 41.  The Court
did, however, note that the U.S. Supreme Court affirmed states’ abilities to
provide property tax exemptions to religious institutions and that a court’s
decision as to whether a religious institution fit within a statutorily
prescribed definition would not necessarily be considered entanglement.  Id. ¶ 40.  To the extent that the Church
argues that the trial court failed to use the precedent established in Our
Lady of Ephesus, it is wrong.  There is no dispute in the present case
that the Church is a religious society subject to the restrictions of
§ 3832(2).  The question presented here is whether a camp operated by
a church qualifies as tax-exempt under the statute.  Because Our Lady
of Ephesus answers a different question, the doctrine of stare decisis is not disturbed by the trial court’s decision.
 See Daniels, 2012 VT 55, ¶ 48 (“We are bound by stare decisis to follow our precedents.”).

¶
19.        
Finally, the Church urges this Court to consider other jurisdictions’
interpretation of church camp exemptions.  Specifically, the Church cites
two cases: one from New York, Gospel Volunteers, Inc. v. Vill.
of Spectacular, 308 N.Y.S.2d 785 (App. Div. 1970)
and one from Colorado, Maurer v. Young Life, 779 P.2d 1317 (Colo.
1989).  While we often look to our sister courts for guidance on matters
of first impression, we are cautious to rely on the rulings derived from
distinct statutory schemes.  We find significant differences in the noted
statutes.[*]
 Both of these frameworks offer a broader base of exemptions while Vermont
law confines its exemptions to an exclusive list of defined structures.
 See 32 V.S.A. § 3832(2).  Accordingly, because the
constrictions of the Vermont law are narrower than New York and Colorado, as
cited by the Church, we do not find the cases persuasive.

Affirmed.

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  















[*]  To qualify for an exemption under the New
York statutory scheme petitioner “must be organized exclusively for the
purposes in section 420 of the Real Property Tax Law; its property must be used
primarily in furtherance of these purposes; and no pecuniary profit from the
plaintiffs’ operation may inure to the benefit of any of its officers, members
or employees, nor may it simply be used as a guise
for profit-making operations.”  Gospel Volunteers,
308 N.Y.S.2d at 788-89 (App. Div. 1970).  Similarly, in Colorado:
“Property, real and personal, that is used solely and exclusively for religious
worship, for schools or for strictly charitable
purposes . . . shall be exempt from taxation, unless
otherwise provided by general law.”  Maurer, 779
P.2d at 1330.